705 S.E.2d 560

**Lynda YOUNG, Plaintiff Below, Appellee,**

v.

**BELLOFRAM CORPORATION, d/b/a Marsh Bellofram Corporation, and Joseph Colletti, Defendants Below, Appellants.**

**No. 35439.**

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 8, 2010.

Decided Nov. 5, 2010.

---

45. The record indicates that at least nineteen hearing transcripts were obtained.

Ancil G. Ramey, Peter J. Raupp, Steptoe & Johnson PLLC, Charleston, WV, G. Ross Bridgman, Nelson D. Cary, Daniel J. Clark, Pro Hac Vice, Vorys, Sater, Seymour and Pease, LLP, Columbus, OH, for the Appellants.

A.L. Emch, W. Scott Evans, Jackson Kelly PLLC, Charleston, WV, for Amici Curiae West Virginia Chamber of Commerce and West Virginia Manufacturers Association.

M. Eric Frankovitch, Kevin M. Pearl, Frankovitch, Anetakis, Colantonio & Simon, Weirton, WV, for the Appellee.

Joyce Goldstein, Goldstein Gragel LLC, Cleveland, OH, for Amicus Curiae International Brotherhood of Teamsters Local 416.

PER CURIAM:

The appellants, Bellofram Corporation, d/b/a Marsh Bellofram Corporation, and Joseph Colletti (hereinafter referred to collectively as "Bellofram"), appeal adverse rulings by the Circuit Court of Hancock County. The first order, entered December 1, 2008, found that Bellofram discriminated against and wrongfully terminated the appellee, Lynda Young (hereinafter "Ms. Young"), on the basis of her age and gender in violation of the West Virginia Human Rights Act, W. Va.Code § 5–11–1 *et seq.*[1] A second order, entered March 24, 2009, awarded attorney's fees and costs to Ms. Young.[2] On appeal to this Court, Bellofram argues that Ms. Young was terminated because of her condonation of illegal behavior by her subordinates, and that neither her age nor her gender played a role in the decision to release her from employment. Based upon the parties' arguments,[3] the record designated for our consideration, and the pertinent authorities, we find that the circuit court erred in determining that Bellofram had discriminated against Ms.

Young based on her age and gender; accordingly, the circuit court is reversed.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Bellofram manufactures a variety of products and employs approximately five hundred people. Ms. Young began her employment with Bellofram in 1994 as a molder. She progressed to senior molder, master molder, and lead molder. On June 28, 2004, at the age of fifty-nine, Ms. Young was promoted to second shift supervisor. Thereafter, employee Ron Jackson complained to Bellofram's human resource employee, Sharon Coleman, alleging racial harassment by three co-workers: Bill Friley, Adam Farmer, and Alan Lockwood. The complaints alleged inappropriate threatening conduct toward Mr. Jackson, as well as racially and sexually inappropriate conduct toward other employees. On October 7, 2005, based on Mr. Jackson's report that he had complained to Ms. Young of the inappropriate conduct and that she had ignored the situation, Ms. Young was placed on an unpaid suspension pending a review. Ms. Coleman performed an internal investigation, resulting in Bellofram's determination that Ms. Young, as the supervisor of the subordinates at issue, knew of the inappropriate conduct but chose to ignore it and told other employees to disregard it as well.

Based on the information discovered during the internal investigation, Bellofram hired a third-party consultant, Mary Ellis, to look into the matter. Ms. Ellis interviewed thirty employees in addition to Ms. Young. Bellofram contends that the report revealed that Ms. Young, as supervisor, was aware of

---

1. The circuit court awarded Ms. Young $180,376.00 in compensatory damages for lost wages and benefits; $58,341.78 as prejudgment interest; and post-judgment interest.

2. Pursuant to W. Va.Code § 5–11–13(c) (1998) (Repl.Vol.2006), Ms. Young was awarded the sum of $172,961.95 in attorney's fees and costs, as well as post-judgment interest.

3. We acknowledge the contribution of amici curiae briefs filed by the International Brotherhood of Teamsters Local 416, as well as a joint brief from the West Virginia Chamber of Commerce and the West Virginia Manufacturers Association. The amici urge this Court to reverse the underlying circuit court orders. We value their insight and will consider their briefs in conjunction with the parties' arguments.

the inappropriate conduct. She admitted that she personally witnessed some of the conduct. Further, she conceded that some employees complained to her about the conduct. However, it is alleged that she took no action to stop the conduct.[4] As a result of the findings of the third-party investigation, Ms. Young's employment was terminated[5] on October 25, 2005, for failing to enforce Bellofram's anti-harassment policy. Ms. Young was sixty years of age when she was dismissed from employment.

Ms. Young instituted a lawsuit against Bellofram, alleging wrongful termination in violation of the West Virginia Human Rights Act, W. Va.Code § 5–11–1 (hereinafter the "Act"); discrimination on the basis of age in violation of the Act; discrimination on the basis of gender in violation of the Act; breach of contract arising from Bellofram's alleged promise to Ms. Young of continued employment until retirement; breach of contract stemming from Ms. Young's complaint that Bellofram failed to follow its progressive disciplinary policy; and the tort of outrage. Bellofram answered that Ms. Young's termination was based on her failure to properly manage or discipline three employees under her supervision, whose inappropriate conduct was confirmed by a report of an independent investigator.

A bench trial was conducted, wherein the lower court found in favor of Ms. Young. The lower court found that

> Ms. Young has stated a prima facie case of employment discrimination arising out of her termination. First, being a woman at the age of 60 when she was terminated puts her in a protected class. Second, she was discharged from employment. Third, a nonmember of the protected group, Donnie Shuman, was disciplined less severely than she was, though both engaged in similar conduct.[6]

(Footnote added). While the circuit court appeared to agree that Ms. Young failed to adequately perform her supervisory role, the lower court felt that the punishment of termination was too harsh: "[Bellofram] failed to follow its progressive disciplinary policy in regards to Ms. Young.... Only after committing a fourth offense and after receiving three previous warnings, should Ms. Young have been terminated." Rather, the circuit court found that Bellofram should have followed its progressive disciplinary policy and simply demoted Ms. Young. Therefore, the lower court concluded that Bellofram's "reason for terminating Ms. Young was pretextual in nature and that Ms. Young's age and/or sex was a determinative factor in its decision to terminate her employment." The circuit court awarded Ms. Young $180,376.00 in compensatory damages for lost wages and

4. The complained-of conduct included derogatory comments such as "slut," "bar whore," and "ho" towards female employees; kicking a disabled employee and yelling "sooee" when near her station; and racially-charged names such as "nigger" to African–American workers, "spics" to persons of Hispanic origin, and "oreos" for biracial children of fellow employees. The three men whose demeanor is in question also physically threatened Mr. Jackson. Additionally, the men asked to see a female worker's breasts, made homosexual comments for the purpose of intimidating a new employee, and put their arms around the shoulders of female co-workers in an unwelcome manner. One female co-worker sought treatment and eventually quit her job as a result of the inappropriate conduct. Mr. Friley, Mr. Farmer, and Mr. Lockwood admitted to engaging in the alleged conduct. However, they indicated that their behavior was significantly milder than what was reported. Further, they indicated that no misconduct occurred in the presence of Ms. Young despite her admission that she witnessed some of the complained-of behavior.

5. The record represents that two of the subordinates were terminated and one was suspended. Subsequent to their adverse employment actions, the men filed complaints under their memberships with the National Labor Relations Union. After an investigation, the union found the terminations to be justified. Ms. Young, as a supervisor, was a salaried employee and was not a union member.

6. Donnie Shuman was a shift supervisor prior to Ms. Young's promotion. He was demoted to lead molder as a result of his performance. It is alleged, by Ms. Young, that the same complained-of misconduct also occurred during Mr. Shuman's tenure as supervisor and that he was disciplined less harshly with a demotion rather than termination. Conversely, Bellofram contends that Mr. Shuman's case is not analogous to Ms. Young because he was demoted for failing to enforce time limits for employee breaks and lunches; whereas, she was terminated for failing to enforce the company's sexual and/or racial harassment policies.

benefits;[7] $58,341.78 as prejudgment interest; and post-judgment interest. The lower court also ordered Ms. Young's counsel to submit a motion for attorney's fees and costs. Following a hearing on the issue, Ms. Young was awarded the additional sum of $172,961.95 in attorney's fees and costs, as well as post-judgment interest. Bellofram argues that the circuit court was clearly wrong and appeals to this Court.

## II.

## STANDARD OF REVIEW

 This appeal results from the lower court's rulings following a bench trial. In appeals from a bench trial, this Court observes the following standard of review:

> In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. pt. 1, *Public Citizen, Inc. v. First Nat'l Bank,* 198 W.Va. 329, 480 S.E.2d 538 (1996). Significantly,

> [t]he deference accorded to a circuit court sitting as factfinder may evaporate if upon review of its findings the appellate court determines that: (1) a relevant factor that should have been given significant weight is not considered; (2) all proper factors, and no improper factors, are considered, but the circuit court in weighing those factors commits an error of judgment; or (3) the circuit court failed to exercise any discretion at all in issuing its decision.

Syl. pt. 1, *Brown v. Gobble,* 196 W.Va. 559, 474 S.E.2d 489 (1996). Mindful of these applicable standards, we proceed to consider the parties' arguments.

7. The damages amount was determined by the circuit court's assumption that Ms. Young should

## III.

## DISCUSSION

Bellofram sets forth the following six assignments of error on appeal to this Court: (1) Ms. Young failed to present a prima facie case of discrimination, (2) the trial court's reliance on an allegedly comparable employee to find disparate treatment was flawed, (3) Ms. Young failed to prove pretext, (4) Ms. Young's claims are preempted by the National Labor Relations Act, (5) Ms. Young's damages should have been reduced because she voluntarily quit subsequent comparable employment, and (6) the trial court erroneously awarded attorney's fees for claims upon which Ms. Young did not prevail. Conversely, Ms. Young avers that the circuit court's findings were supported by the evidence, which, she alleges, illustrates that she was discriminated against based upon her age and gender. Because we determine that Bellofram did not discriminate against Ms. Young on the basis of either age or gender, we decline to address the additional assignments of error that are rendered irrelevant by our reversal of the lower court's rulings on discrimination.

Under the West Virginia Human Rights Act, it is unlawful "[f]or any employer to discriminate against an individual with respect to ... tenure, terms, conditions or privileges of employment[.]" W. Va.Code § 5–11–9(1) (1998) (Repl.Vol.2006). "The term 'discriminate' or 'discrimination' means to exclude from, or fail or refuse to extend to, a person equal opportunities because of race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status and includes to separate or segregate[.]" W. Va.Code § 5–11–3(h) (1998) (Repl.Vol.2006).

 The general guideline previously articulated by this Court is as follows:

> In an action to redress unlawful discriminatory practices in employment ... the burden is upon the complainant to prove by a preponderance of the evidence a prima facie case of discrimination[.] If the complainant is successful in creating this

have been demoted to an hourly position.

rebuttable presumption of discrimination, the burden then shifts to the respondent to offer some legitimate and nondiscriminatory reason for the rejection. Should the respondent succeed in rebutting the presumption of discrimination, then the complainant has the opportunity to prove by a preponderance of the evidence that the reasons offered by the respondent were merely a pretext for the unlawful discrimination.

Syl. pt. 3, in part, *Shepherdstown Volunteer Fire Dep't v. State ex rel. State of W. Va. Human Rights Comm'n,* 172 W.Va. 627, 309 S.E.2d 342 (1983).[8] Thus, the first step in the analysis is to determine whether the complainant proved by a preponderance of the evidence a prima facie case of discrimination. We will first address Ms. Young's age discrimination claim, then turn our attention to her gender discrimination claim.

### A. Age Discrimination

■ In this regard, this Court has set forth that,

[i]n order to make a prima facie case of employment discrimination under the West Virginia Human Rights Act, W. Va.Code § 5–11–1 *et seq.* (1979), the plaintiff must offer proof of the following: (1) That the plaintiff is a member of a protected class[;] (2) That the employer made an adverse decision concerning the plaintiff[; and] (3) But for the plaintiff's protected status, the adverse decision would not have been made.

Syl. pt. 3, *Conaway v. Eastern Associated Coal Corp.,* 178 W.Va. 164, 358 S.E.2d 423 (1986). There is no dispute that Ms. Young is a member of two protected classes because she is a female over the age of forty. *See* W. Va.Code § 5–11–3 (1998) (Repl.Vol.2006). Further, it is clear that Bellofram made an adverse decision concerning Ms. Young's employment status when it terminated her position with the company. Thus, the focus of our analysis of Ms. Young's prima facie evidence for age discrimination rests with the third prong: "But for the plaintiff's protected

status, the adverse decision would not have been made." Syl. pt. 3, in part, *Conaway,* 178 W.Va. 164, 358 S.E.2d 423.

■ This Court has explained that "[t]he 'but for' test of discriminatory motive in *Conaway v. Eastern Associated Coal Corp.,* 178 W.Va. 164, 358 S.E.2d 423 (1986), is merely a threshold inquiry, requiring only that a plaintiff show an inference of discrimination." Syl. pt. 2, *Barefoot v. Sundale Nursing Home,* 193 W.Va. 475, 457 S.E.2d 152 (1995). Importantly, "[w]hat is required of the plaintiff is to show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion." *Conaway,* 178 W.Va. at 170–71, 358 S.E.2d at 429–30 (internal footnote omitted).

In the instant case, the trial court found that Ms. Young met her prima facie burden. Generally, the lower court's order found that

Ms. Young has stated a prima facie case of employment discrimination arising out of her termination. First, being a woman at the age of 60 when she was terminated puts her in a protected class. Second, she was discharged from employment. Third, a nonmember of the protected group, Donnie Shuman, was disciplined less severely than she was, though both engaged in similar conduct.

Despite the mention in the lower court's order that Ms. Young was sixty years of age at the time of her termination, the order provides no further specifics to support its conclusion that Ms. Young submitted sufficient evidence to support an age discrimination claim.

■ We note that Donnie Shuman was not a member of Ms. Young's protected gender class; however, he was a member of the protected age class because he was over the age of forty. Thus, being members of the same protected age class, the allegedly lenient treatment of Donnie Shuman cannot sustain Ms. Young's age discrimination claim.

---

8. This three-step framework is known as the McDonnell Douglas/Burdine model. *See generally McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) *and Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

*See* Syl. pt. 4, *Barefoot v. Sundale Nursing Home*, 193 W.Va. 475, 457 S.E.2d 152 (1995) ("Unless a comparison employee and a plaintiff share the same disputed characteristics, the comparison employee cannot be classified as a member of a plaintiff's class for purposes of rebutting prima facie evidence of disparate treatment."). Because Mr. Shuman was over the age of forty and also in Ms. Young's protected age class, the allegation by Ms. Young that Mr. Shuman received more lenient treatment fails to show evidence of age discrimination. Accordingly, Ms. Young neglected to provide a comparable employee outside of the protected age group. Importantly, we point out that Ms. Young's promotion occurred at the age of fifty-nine, and her termination occurred when she was sixty years of age. A promotion at the age of fifty-nine does not support Ms. Young's claim that she was discriminated against on the basis of her age. Determining that Ms. Young's prima facie case for age discrimination fails, we will now turn our focus to her gender discrimination claim.

### B. Gender Discrimination

■ In examining this conclusion by the circuit court, we note the reliance placed by the lower court on comparing the conduct of Mr. Shuman and Ms. Young. In so doing, the lower court found that "a nonmember of the protected group, Donnie Shuman, was disciplined less severely than [Ms. Young] was, though both engaged in similar conduct." In our review of this specific claim, the law has been set forth as follows:

A complainant in a disparate treatment, discriminatory discharge case ... may meet the initial *prima facie* burden by proving, by a preponderance of the evidence, (1) that the complainant is a member of a group protected by the Act; (2) that the complainant was discharged, or forced to resign, from employment; and (3) that a nonmember of the protected group was not disciplined, or was disciplined less severely, than the complainant, though both engaged in similar conduct.

Syl. pt. 2, in part, *State ex rel. State of W. Va. Human Rights Comm'n v. Logan–Mingo Area Mental Health Agency, Inc.*, 174 W.Va.

711, 329 S.E.2d 77 (1985). In reaching its conclusion, the circuit court found as follows:

[The] investigation revealed that other male supervisory employees, J.D. Harris and Donnie Shuman, were aware of the conduct alleged by Mr. Friley, Mr. Farmer, and Mr. Lockwood.

Prior to Ms. Young's promotion to supervisor, Donnie Shuman was her supervisor.

During Mr. Shuman's tenure as supervisor, much of the misconduct that allegedly formed the basis for the termination of Mr. Friley, Mr. Farmer, and Ms. Young, and the suspension of Mr. Lockwood also occurred.

Mr. Shuman was demoted from the salaried position of supervisor and was permitted to return to an hourly position in the bargaining unit when he failed to control the employees working under him.

Ms. Young was not given the option of returning to an hourly position in the bargaining unit when she was terminated from her supervisor position despite assurances by [Bellofram] that this opportunity would be available if her promotion proved to be unsuccessful.

Thus, the circuit court based its conclusion that Ms. Young satisfied her prima facie burden on its finding that Donnie Shuman was a nonmember of the protected group who was disciplined less harshly than was Ms. Young. We find this proposition unsupported by the record.

■ A thorough review of the record reveals that Donnie Shuman was in a supervisory position for approximately six years. Contemporaneous in time to his demotion, Mr. Shuman was experiencing extreme personal difficulties that prevented him from performing his job requirements satisfactorily. Further, Bellofram determined that Mr. Shuman failed in controlling his subordinates insofar as he failed to enforce time limits for breaks, *etc.* While Mr. Shuman, as supervisor, did receive some employee complaints of harassing behavior, the testimony before the circuit court was that Mr. Shuman talked with the alleged perpetrator and the misconduct ceased.

Mr. Shuman's history is not comparable to that of Ms. Young's employment as supervi-

sor. In Ms. Young's position, she received complaints of harassing conduct, and her response was to ignore the conduct. Such a reaction encouraged employees to continue to engage in illegal conduct that was racially and sexually harassing to other co-workers. Because of the difference in the severity of the conduct for which they were disciplined, a disparity in discipline for Mr. Shuman and Ms. Young was warranted. The circuit court's conclusion "that a nonmember of the protected group, Donnie Shuman, was disciplined less severely than [Ms. Young], though both engaged in similar conduct[ ]" is not supported by the record. While they both were disciplined while in the same position of supervisor, the conduct for which they were disciplined was not comparable. Thus, we find that Ms. Young's prima facie case for gender discrimination also fails.

To maintain her claims of age and gender discrimination, Ms. Young is required to prove that there is a nexus between her protected class and the discipline imposed. She has failed to do so. The circuit court's ruling that Ms. Young met her prima facie burden is erroneous and is hereby reversed.

### C. Progressive Discipline

Because we have determined that Ms. Young failed to meet her burden of proving a prima facie case of discrimination, we need not address the burden shifting to the employer or the rebuttal opportunities of the complainant. However, we briefly address this area to emphasize another portion of the circuit court's order that was clearly wrong, necessitating the reversal ordered by this Court.

▮ In the present case, the circuit court agreed that Ms. Young's conduct merited discipline.[9] However, the circuit court felt that termination was too harsh. The trial court found that Bellofram "did not follow its progressive disciplinary policy[,]" which it relied on to find that Bellofram's reasons for terminating Ms. Young were pretextual. Regarding pretext, we have counseled that,

"[w]hen an employee makes a prima facie case of discrimination, the burden then shifts to the employer to prove a legitimate, nonpretextual, and nonretaliatory reason for the discharge. In rebuttal, the employee can then offer evidence that the employer's proffered reason for the discharge is merely a pretext for the discriminatory act." Syllabus Point 2, *Powell v. Wyoming Cablevision, Inc.*, 184 W.Va. 700, 403 S.E.2d 717 (1991).

Syl. pt. 4, *Birthisel v. Tri–Cities Health Servs. Corp.*, 188 W.Va. 371, 424 S.E.2d 606 (1992).

The lower court explained that Bellofram's policies "provide[ ] for progressive disciplinary action for violation of any rules or standards of conduct. The First and Second offense require a written warning. The Third offense requires a two-day suspension. The Fourth offense requires discharge from employment." We find this assertion to be inaccurate because Bellofram was not obliged to follow a progressive disciplinary policy in all cases. In examining the exhibit submitted by Bellofram titled "Office Rules and Standards of Conduct[,]" the lower court erroneously relied on Rule 15 for the proposition that Bellofram failed to follow its internal progressive discipline policy. However, a review of the record reveals that, while Bellofram had a written policy regarding progressive discipline for violations of certain rules, the written policy regarding sexual harassment is stated in company policy 202 and explains that discipline for sexual harassment can include dismissal. The lower court failed to address this rule in its order. Moreover, in her testimony, Ms. Young admitted that she was aware of the sexual harassment policy, and she further conceded that termination would be appropriate for a supervisor who was aware of such misconduct of subordinates but did nothing to stop the behavior.

In summary, we determine that Ms. Young failed to control the harassing behavior of her subordinates towards other employees;

---

9. Bellofram provided a legitimate reason for Ms. Young's discharge. *See* Syl. pt. 2, *West Virginia Inst. of Tech. v. West Virginia Human Rights Comm'n*, 181 W.Va. 525, 383 S.E.2d 490 (1989) ("The complainant's prima facie case of disparate-treatment employment discrimination can be rebutted by the employer's presentation of evidence showing a legitimate and nondiscriminatory reason for the employment-related decision in question which is sufficient to overcome the inference of discriminatory intent.").

**62**

therefore, Bellofram had the right to terminate her employment to protect itself from liability pertaining to the work environment created by Ms. Young's inactions. *See* Syl. pt. 8, *Paxton v. Crabtree*, 184 W.Va. 237, 400 S.E.2d 245 (1990) ("An employer will not be liable for discriminatory acts of its employee unless he knew or reasonably should have known of the discriminatory acts and did nothing to correct them, or expressly or impliedly authorized or ratified them."). We find that the lower court was clearly wrong in finding that Ms. Young proved a prima facie case of age and/or gender discrimination.

## IV.

### CONCLUSION

Based upon the foregoing, we find the March 24, 2009, final order of the Circuit Court of Hancock County to be clearly wrong in light of the record. We have determined that the evidence was insufficient to sustain Ms. Young's claims for wrongful termination and discrimination on the basis of her age and gender in violation of the West Virginia Human Rights Act, W. Va.Code § 5–11–1 *et seq.* Therefore, the rulings of the lower court, which erroneously found that Ms. Young presented a prima facie case of discrimination and which improperly awarded attorney's fees and costs, are reversed.

Reversed.