# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Andrew O.,**
**Plaintiff Below, Petitioner**

**FILED**

**June 24, 2013**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs) No. 12-1255** (Kanawha County 11-C-907)

**Racing Corporation of West Virginia**
**d/b/a Mardi Gras Casino and Resort,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Andrew O.,[1] by counsel Cameron S. McKinney, appeals the order granting summary judgment in favor of Respondent Racing Corporation of West Virginia d/b/a Mardi Gras Casino and Resort, in petitioner's action for disability discrimination. Respondent, by counsel Ricklin Brown and Mary Pat Statler, filed a response to which petitioner replied.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On April 29, 2010, respondent's human resources manager hired then twenty-two year old petitioner, a blackjack dealer, on a part-time basis. When he was hired, petitioner weighed about 540 pounds. Petitioner claims that he has struggled with his weight since childhood; he was diagnosed with thyroid disease at age twelve; and he has arthritis in his legs and back.[2] Petitioner contends that his morbid obesity precludes him from finding clothing that fits him properly and restricts his endurance in standing and walking.

Respondent requires all new employees to attend an orientation session that covers topics including employee lunches and breaks, personal appearance and uniforms, and employee break and smoke areas. Petitioner received respondent's handbook at orientation. The handbook lists conduct that is subject to disciplinary action, such as failing to comply with respondent's dress code and/or abusing lunch and break periods. At the end of his orientation session, petitioner signed an acknowledgement that he had received the handbook and had read and understood its policies.

---

[1] The Court will address petitioner by his first name and last initial because his medical history is discussed herein.

[2] Respondent claims that petitioner failed to provide, during his employment with respondent or the pendency of this lawsuit, any medical documentation verifying that he has a thyroid condition or arthritis.

1

Petitioner was required to wear a company-supplied uniform at work that included a long-sleeved tuxedo shirt, a bow tie, an apron, and black pants. The handbook requires dealers to keep their tuxedo shirts tucked into their pants and their sleeves rolled down and buttoned at the wrists. Respondent did not have a tuxedo shirt on hand that would fit petitioner, so it attempted to order tuxedo shirts from various websites, including those suggested by petitioner. However, those merchants either failed to carry tuxedo shirts or did not have a tuxedo shirt large enough to fit petitioner. Respondent considered having a custom shirt made for petitioner, but decided the cost was prohibitive. Respondent thereafter located a size 7X tuxedo shirt online that respondent's seamstress altered for petitioner. Petitioner claims that the altered shirt did not fit him in such a way that he could tuck it into his pants. Petitioner also claims that his direct supervisors allowed him to leave his shirt untucked until the problem could be resolved. Respondent claims that petitioner failed to approach the appropriate management personnel, as required by the handbook, regarding an accommodation.

Soon after he began working for respondent, petitioner told his immediate supervisors that he was unable to walk to and from the employee break area during his twenty-five minute break without shortness of breath and becoming fatigued. Petitioner claims that, in response, his immediate supervisors allowed him to take breaks in an alternate area. Petitioner also had problems standing for long periods. Petitioner supplied respondent with a note from his doctor that said, in toto, "[petitioner] needs to sit down at work due to his weight condition." In response, respondent assigned petitioner a wheelchair-accessible blackjack table so he could sit while he worked.

On June 5, 2010, about a month after he was hired, petitioner's direct supervisor gave petitioner a reprimand on an "Employee Counseling Form." The reprimand was issued by the assistant director of gaming who apparently was the supervisor of petitioner's direct supervisors. The reprimand stated that a dealer must keep his shirt tucked into his pants and take breaks in designated areas. Respondent claims that petitioner was cited because his tuxedo shirt was not tucked into his pants, his apron was concealed or not on his person, and his shirt sleeves were rolled up. Petitioner claims that he contacted several supervisors and the human resources manager regarding his need for accommodations. In regard to his break location, petitioner claims that his direct supervisors assured him that he could continue to take his breaks in the previously-approved alternate areas. Petitioner also claims that the human resource manager told him she "would take care of it."

On June 12, 2010, the assistant director of gaming gave petitioner a second reprimand, an "Employee Warning Report," for taking breaks outside of the designated areas. Respondent claims that petitioner took breaks in public areas of the casino reserved solely for patron use. Petitioner was entitled to write objections to the warning on the "Employee Warning Form." Petitioner wrote that he was unable to walk to and from the designated break area in the allotted time without "wearing out." Petitioner claims that he asked the assistant director of gaming that same day to designate an alternate area for his break. The assistant director of gaming told petitioner that his doctor's note regarding petitioner's inability to stand while working did not support petitioner's request for an alternate break area. Petitioner replied that he would secure a second doctor's statement the following week at a previously scheduled doctor's appointment.

2

Thereafter, the assistant director of gaming designated a temporary alternate break area for petitioner. Respondent claims that when petitioner approached the assistant director of gaming, it was the first time petitioner spoke with the appropriate supervisor regarding the need for accommodations.

When petitioner next came to work on June 16, 2010, his tuxedo shirt was not tucked into his pants and his sleeves were not buttoned at his wrists. About an hour into his shift, respondent's human resource manager suspended petitioner for "performance-based issues." Following an investigation, the human resource manager terminated petitioner later that month for dress code and break area violations. In all, petitioner worked for respondent for less than two months.

Petitioner filed an action for disability discrimination in circuit court pursuant to the West Virginia Human Rights Act ("WVHRA"), West Virginia Code §§ 5-11-1 to -20, against respondent on June 2, 2011. Respondent deposed petitioner on November 29, 2011. Respondent filed a motion for summary judgment on February 8, 2012. Following a hearing, the circuit court granted respondent's summary judgment motion by order entered on September 10, 2012. The circuit court found that:

(1) Petitioner was not disabled, in part, because obesity is not a per se impairment under the WVHRA, and in part because petitioner acknowledged that he was able to do everything that an average person was capable of doing.

(2) Respondent had legitimate and non-discriminatory reasons for terminating petitioner's employment including ensuring uniformity of employees' apparel; keeping employees on break away from respondent's patrons; and proscribing incompetence and insubordination in its employees.

Petitioner now appeals the circuit court's order.

We review a summary judgment order under a de novo standard of review. Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Summary judgment should be granted when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law. Syl. Pt. 2, *id.*; Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

Discrimination claims under the WVHRA are governed by the well-known, three-step, evidentiary framework outlined in *McDonald Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981)(the "*McDonald Douglas-Burdine*" framework):

"In an action to redress unlawful discriminatory practices in employment . . . the burden is upon the complainant to prove by a preponderance of the evidence a prima facie case of discrimination[.] If the complainant is successful in creating this rebuttable presumption of discrimination, the burden then shifts to the respondent to offer some legitimate and nondiscriminatory reason for the

rejection. Should the respondent succeed in rebutting the presumption of discrimination, then the complainant has the opportunity to prove by a preponderance of the evidence that the reasons offered by the respondent were merely a pretext for the unlawful discrimination." Syllabus point 3, in part, *Shepherdstown Volunteer Fire Department v. State ex rel. State of West Virginia Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983).

Syl. Pt. 2, *Young v. Bellofram Corp.*, 227 W.Va. 53, 705 S.E.2d 560 (2010).

On appeal petitioner first argues that the circuit court erred in finding that he was not disabled under the WVHRA. Petitioner argues that he is disabled under West Virginia Code § 5-11-3(m)(1) because he is physically impaired and his impairments substantially limit one or more of his major life activities. Specifically, petitioner argues that his morbid obesity, thyroid condition, and arthritis substantially limit his endurance while standing and walking and his ability to care for himself due to his difficulty in finding clothing to dress himself. Petitioner contends that the circuit court erroneously found that he "acknowledges that he is able to do everything that an average person is capable of doing." Petitioner counters that he actually said, "I can do almost everything. It's just that I have to go at my own pace."

Petitioner next argues that he meets the definition of disability under West Virginia Code § 5-11-3(m)(3) which defines "disability" as "[b]eing regarded as having such an impairment." Petitioner argues that respondent's accommodations or attempted accommodations on his behalf were indisputable proof that respondent regarded him as disabled. Respondent counters that it did not "regard" petitioner as disabled, but instead regarded him as an obese employee with limitations.

In order to be protected by the WVHRA, a person must first prove he or she is a person with a "disability." *Smith v. W.Va. Human Rights Comm'n*, 216 W.Va. 2, 6, 602 S.E.2d 445, 449 (2004). The circuit court correctly found that the rules promulgated by the Human Rights Commission to assist in interpreting the WVHRA do not include "obesity" in the list of physical impairments that typically denote a particular disability. *See* W.Va. Code R. §§ 77-1-2, and -2.2 to -2.4 (1994). Therefore, obesity is not a per se disability under the WVHRA. As for petitioner's claims that he has a thyroid condition and arthritis, he does not contest respondent's claim that he failed to provide any medical documentation regarding those conditions. Moreover, petitioner conceded at his deposition that he takes no medication for thyroid disease and that his doctor does not attribute his morbid obesity to any underlying health issue.

To survive a motion for summary judgment, the opposing party "must satisfy the burden of proof by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 60, 459 S.E.2d 329, 337 (1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Therefore, to withstand respondent's motion for summary judgment, petitioner was required to provide some evidence that he was disabled or that respondent regarded him to be disabled. This burden is particularly significant here, given that respondent's human resource manager both hired and fired petitioner within a two-month time period. In *Johnson v. Killmer*, 219 W.Va. 320, 325, 633 S.E.2d 265, 270 (2006), we said, "in cases where

the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." Therefore, respondent is entitled to a strong inference that discrimination was not a determining factor in petitioner's termination.

In regard to petitioner's claim that the circuit court erred in failing to find that he was disabled, we find that based on the facts above, petitioner failed to make a sufficient showing that he is disabled under the WVHRA to survive respondent's motion for summary judgment. Hence, the circuit court did not err in granting summary judgment to respondent on petitioner's claim that he was disabled.

Petitioner next argues that he was disabled under the WVHRA because his obesity, thyroid condition, and arthritis substantially limited him in a major life activity. However, as the circuit noted in its order on appeal, petitioner testified at his deposition that he was able to "do almost everything" the average person does, albeit at his own pace. Further, petitioner's doctor's note—regarding petitioners need to sit while he worked—did not indicate that petitioner was substantially limited in a major life activity. Given that respondent is entitled to a strong inference that discrimination was not a determining factor in petitioner's termination, we find that the circuit court did not err in finding that petitioner was not disabled. The record taken as a whole could not have led a rational trier of fact to find for petitioner because he failed to make a sufficient showing that he was substantially limited in a major life activity. Syl. Pt. 4, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) ("Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.").

As for petitioner's argument that respondent regarded him as disabled, the mere fact that respondent accommodated or attempted to accommodate petitioner's needs is not a sufficient showing that respondent considered petitioner to be disabled. Further, the assistant director of gaming's hesitance to provide an alternate break location for petitioner absent a doctor's note supports the finding that respondent did not regard petitioner to be disabled. It is sound business policy for an employer to assist an employee in performing his or her job functions. However, we do not find that assisting an employee with a particular need, such as allowing the employee to sit while working, automatically means that the employer considers that employee to be disabled. Therefore, we find that the circuit court did not err in failing to find petitioner to be disabled because petitioner failed to present sufficient evidence that respondent regarded him as disabled.

Even if petitioner had established a prima facie case that he was disabled or respondent regarded him as disabled, pursuant to the *McDonnell Douglas-Burdine* framework noted above, respondent offered reasons in its business interest for petitioner's termination. *See* Syl. Pt. 2, *Young.* Here, the circuit court found respondent's reasons to terminate petitioner's employment to be legitimate, nondiscriminatory, and wholly unrelated to petitioner's obesity or other physical conditions.

5

Petitioner next argues that the circuit court erred in refusing to interpret the WVHRA in light of federal cases applying the Americans with Disabilities Act ("ADA"). Petitioner highlights one such case, *E.E.O.C. v. Resources for Human Development, Inc.*, 827 F.Supp.2d 688 (E.D.La. 2011), which notes that under the ADA's implementing regulations, drafted by the Equal Employment Opportunity Commission ("E.E.O.C."), obesity may be an "impairment" if it is "severe" or results from a physiological disorder:

> [B]eing overweight, in and of itself, is not generally an impairment . . . On the other hand, severe obesity, which has been defined as body weight more than 100% over the norm, is clearly an impairment. In addition, a person with obesity may have an underlying or resultant physiological disorder, such as hypertension or a thyroid disorder. A physiological disorder is an impairment.

*Id.* at 694 (citing E.E.O.C. Compliance Guidelines § 902.2(c)(5)) (footnote omitted). Petitioner argues that his obesity is severe and could have resulted from his thyroid condition and arthritis; therefore, if the circuit court had applied the ADA, it would have found him to be disabled.

In the order on appeal, the circuit court rejected petitioner's argument that it should rely on federal cases interpreting the ADA on the ground that the West Virginia Legislature "has not amended the WVHRA to mirror the amendments to the Americans with Disabilities Act ("ADA") (now called the ADA Amendments Act of 2008 ("ADAAA"))." In *Stone v. St. Joseph's Hospital of Parkersburg*, 208 W.Va. 91, 106, 538 S.E.2d 389, 404 (2000) (footnote omitted), we said that while federal disability jurisprudence may prove helpful in interpreting the WVHRA, the WVHRA "as created by our Legislature and as applied by our courts and administrative agencies, represents an independent approach to the law of disability discrimination that is not mechanically tied to federal disability discrimination jurisprudence." Therefore, the circuit court did not err in choosing not to apply federal cases interpreting the ADA or ADAAA to petitioner's WVHRA-based lawsuit.

Petitioner last argues that the circuit court erred in finding that respondent provided petitioner "reasonable accommodations" with regard to his uniform and break area. Pursuant to West Virginia Code § 5-11-9, an employer's duty to accommodate an employee is triggered by an employee's recognized disability. *See Skaggs v. Elk Run Coal Co., Inc.*, 198 W.Va. 51, 479 S.E.2d 561 (1996). As we have affirmed the circuit court's conclusion that petitioner failed to make a sufficient showing that he was disabled or that respondent regarded him as disabled, we decline to address this issue.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 24, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II