# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Carl Campion,**
**Plaintiff Below, Petitioner,**

**vs) No. 15-0689** (Kanawha County 14-C-1002)

**West Virginia Department**
**of Education,**
**Defendant Below, Respondent.**

**FILED**

**June 3, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Carl Campion, by counsel James A. Varner, Sr., and Ronald G. Kramer, II, appeals the June 23, 2015, order of the Circuit Court of Kanawha County granting summary judgment to Respondent the West Virginia Department of Education. Respondent, by counsel Kelly C. Morgan and Kristen V. Hammond, filed its response, to which petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner Carl Campion learned that a collision repair instructor position was about to be available at the Huttonsville Correctional Center ("HCC"), so he inquired about the salary for the position. According to petitioner, the principal at HCC, Ernest Gooding Jr., told him that it would pay "in the low 40's . . . somewhere around $42,000" per year. In the spring of 2013, the job was posted with a starting base salary of $38,010 for an instructor with zero years teaching experience and a bachelor of arts degree. On or about April 8, 2013, petitioner applied for the position. Only one other person applied for the job, and both were interviewed on May 31, 2013, by Mr. Gooding and HCC instructor Richard Kisner Jr.[1] Mr. Gooding advised petitioner that if he received the job, his starting salary would be $38,010 because he did not have any prior teaching experience. Following the interview, both Mr. Gooding and Mr. Kisner scored petitioner as the most qualified candidate.

On June 3, 2013, Mr. Gooding left petitioner a voicemail stating that he would like to

---

[1]At the time they interviewed for the position, petitioner was fifty-one years old and the other applicant was under the age of forty.

1

offer petitioner the job and asked him to return the call to discuss the terms.[2] Later that day, Mr. Green, the Special Assistant to the Associate Superintendent at the West Virginia Department of Education's Office of Institutional Education Programs, returned a call from petitioner made on May 29, 2013, and discussed petitioner's belief that the salary should be $48,789. Petitioner stated at that time that he had discussed the starting salary for Career and Technical Education ("CTE") instructors with a Randolph County Board of Education ("RCBE") technical center principal, Donald Johnson, who had informed him that petitioner would be credited with ten years teaching experience based upon his industry work experience. After speaking with Mr. Johnson, petitioner contacted Delegate Denise Campbell to complain that respondent was not offering him the salary that the RCBE was paying. Ms. Campbell followed up on petitioner's complaint by contacting Mr. Green to discuss the matter.

Mr. Green informed petitioner that because it was his understanding that the RCBE did not give credit to CTE instructors for industry experience, Mr. Green would need to investigate the matter. The RCBE Superintendent Terry George told Mr. Gooding and Mr. Green that the RCBE did not have a written policy on work experience credit and offered it as a recruitment tool on an ad hoc basis, depending on the depth of the applicant pool.

On June 13, 2013, Mr. Gooding left petitioner a voicemail message advising him the RCBE would not put its salary practice for new CTE teachers in writing, so the collision repair instructor job offer remained at the base salary. He asked that petitioner return the call if he was interested in the position. Petitioner returned the call that evening but stated that he wanted to wait to see if the RCBE would develop a written policy of awarding work experience credit before making a decision. On June 17, 2013, Mr. Green directed Mr. Gooding to advise petitioner that he had until noon on June 18, 2013, to convey his decision. On June 18, 2013, Mr. Gooding attempted to reach petitioner by phone at least twice, but he did not reach petitioner and petitioner's voicemail did not pick up. That evening, the other candidate was offered the job, and neither Mr. Green nor Mr. Gooding heard from petitioner again about the job.

Petitioner filed his original complaint against respondent on or about January 16, 2014, in the Circuit Court of Randolph County.[3] His amended complaint before the Circuit Court of

---

[2] While the timing is unclear from the record and petitioner's argument, petitioner asserts that he tried to respond to Mr. Gooding's call several times but that Mr. Gooding was unavailable. Nonetheless, after receiving the job offer, petitioner informed his then-employer, the West Virginia Department of Highways ("WVDOH"), that he had accepted a position with respondent so he was resigning from the WVDOH. According to petitioner, and an affidavit from Michael Moran at the WVDOH, the WVDOH offered petitioner a 10% raise if he stayed with the WVDOH. However, petitioner declined the raise because he said it would still be less money than he would earn in the teaching position at issue. This is contrary to respondent's assertion that, while petitioner earned less per year with the WVDOH, with overtime petitioner made more than $38,010 in 2012. Respondent's assertion is supported by the WVDOH payroll record included in the appendix.

[3] Petitioner voluntarily dismissed the Randolph County action on January 23, 2014, and refiled in the Circuit Court of Kanawha County on March 6, 2014.

Kanawha County, filed on or about August 25, 2014, asserted claims for age discrimination, wrongful termination, and claims under the Whistleblower Law. Following discovery, respondent submitted its motion for summary judgment to the circuit court. The circuit court heard oral argument on respondent's motion on February 3, 2015, during the final pretrial conference. The circuit court held a status conference on February 23, 2015, and ordered the parties to conduct another mediation session. On June 23, 2015, the circuit court entered its order granting summary judgment to respondent, which includes the following findings: (1) any attempt to bind respondent would have been an ultra vires act; (2) West Virginia Code § 6C-1-4(a) requires that a whistleblower action be brought within 180 days after the occurrence of the alleged violation, but petitioner filed his action more than thirty days beyond that deadline; (3) petitioner was offered the job but was never an employee as defined by West Virginia Code § 6C-1-2(b) since he never accepted the position and was not approved for hire by the State Superintendent and Governor's office; (4) petitioner was never an employee because he never performed a service for a wage for respondent; (5) although petitioner was determined by respondent to be the most qualified applicant, when he was offered the job he did not accept the position at the offered salary of $38,010 per year; (6) petitioner's age was not the reason respondent offered the job to the second most qualified applicant; (7) petitioner never accepted the job because he mistakenly believed that he was entitled to more money; (8) only after petitioner refused to respond to respondent's final offer on June 17, 2014, was the job offered to the second most qualified applicant; and (9) the State salary statutes were not violated as a matter of law.[4] The circuit court also dismissed all of petitioner's claims against respondent in the underlying action with prejudice. Petitioner appeals from that order.

"We review a circuit court's summary judgment order *de novo*. Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994)." *Chesapeake Appalachia, L.L.C. v. Hickman*, 236 W.Va. 421, __, 781 S.E.2d 198, 211 (2015). Further,

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. Pt. 4, *Painter v. Peavy*, 192 W.Va. at 190, 451 S.E.2d at 756.

"'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syl. Pt. 1, *Carr v. Michael Motors, Inc.,* 210 W.Va. 240, 557 S.E.2d 294 (2001). As we have also explained,

> [r]oughly stated, a "genuine issue" for purposes of West Virginia Rule of
> Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine

---

[4]Counsel for respondent prepared the summary judgment order that was entered by the circuit court.

3

issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

Syl. Pt. 5, *Jividen v. Law*, 194 W.Va. 705, 461 S.E.2d 451 (1995).

Stated another way, "[i]f the evidence favoring the nonmoving party is 'merely colorable . . . or is not significantly probative'" a genuine issue does not arise, and summary judgment is appropriate. *Williams* [*v. Precision Coil, Inc.*]*,* 194 W.Va. [52,] at 60-61, 459 S.E.2d [329,] at 337-38 (quoting *Anderson* [*v. Liberty Lobby, Inc.*]*,* 477 U.S. [242,] at 249-50, 106 S.Ct. [2505,] at 2511 (citations omitted in original)).

*Jividen*, 194 W.Va. at 713-14, 461 S.E.2d at 459-60.

On appeal, petitioner asserts four assignments of error. First, he contends that the circuit court's decision to award summary judgment as to his age discrimination claim constitutes reversible error because genuine factual disputes exist as to whether his age was a motivational bias behind respondent's decision to hire a younger, unqualified applicant. Petitioner argues that he presented sufficient facts to establish a prima facie case of age discrimination because he was qualified for the position and was over the age of forty while the younger applicant did not meet the minimum qualifications but was hired over petitioner.[5] He asserts that the evidence and his testimony showed that he accepted the job but respondent refused to give him a start date because the younger applicant was deemed to be a more "long-term fit."[6] Petitioner points to affidavits from employees at the West Virginia Division of Highways ("WVDOH"), which both

---

[5]In syllabus point three of *Knotts v. Grafton City Hospital*, __ W.Va. __, __ S.E.2d __, 2016 WL 1564289 (April 14, 2016), we stated the following:

In an age discrimination employment case brought under the West Virginia Human Rights Act, W.Va. Code § 5-11-1, *et seq.* [1967], this Court adopts the "substantially younger" rule contained in *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 116 S.Ct. 1307 (1996). In view of this holding, the "over 40/under 40" rule applied by this Court in *Young v. Bellofram Corp.,* 227 W.Va. 53, 705 S.E.2d 560 (2010) (per curiam), is overruled.

While we recognize that the parties argued the motion for summary judgment below based on the "over 40/under 40" rule, that issue is not dispositive of petitioner's appeal.

[6]In an e-mail during the hiring process, Mr. Gooding wrote that it was his belief that petitioner would not accept the position, referencing salary issues. He then said that the other candidate had real potential and was "a long term fit." In his deposition, Mr. Gooding explained that statement in the e-mail by testifying that petitioner expressed the strong possibility that he would remain in the job for four or five years before retiring.

show that petitioner informed them that he was leaving his position there to work at HCC. One of those affidavits shows that petitioner turned down a 10% pay increase if he remained at the WVDOH.

> "In order to make a prima facie case of employment discrimination under the West Virginia Human Rights Act, W.Va. Code § 5-11-1 *et seq.* (1979), the plaintiff must offer proof of the following: (1) That the plaintiff is a member of a protected class. (2) That the employer made an adverse decision concerning the plaintiff. (3) But for the plaintiff's protected status, the adverse decision would not have been made." Syllabus Point 3, *Conaway v. Eastern Associated Coal Corp.,* 178 W.Va. 164, 358 S.E .2d 423 (1986).

Syl. Pt. 1, *Knotts v. Grafton City Hospital*, __ W.Va. __, __ S.E.2d __, 2016 WL 1564289 (April 14, 2016).

> Our cases addressing employment age discrimination provide for recovery "premised upon theories of disparate treatment and disparate impact." *Moore v. Consolidated Coal Co.,* 211 W.Va. 651, 660, 567 S.E.2d 661, 670 (2002) (Davis, J., concurring). "Disparate treatment is applicable to claims of intentional discrimination, as opposed to claims that a facially neutral practice is having disparate impact upon a protected class." *West Virginia Univ./West Virginia Bd. of Regents v. Decker,* 191 W.Va. 567, 570–71, 447 S.E.2d 259, 262–63 (1994).

*Knotts* at *8. Petitioner's complaint is predicated solely upon a claim of disparate treatment - he alleges that respondent discriminated against him on the basis of his age.

The record in this case reveals that despite petitioner's comment to the effect that he would only remain in the position for four to five years before retiring, respondent extended the job offer to petitioner. As we have previously recognized, "self-serving assertions without factual support in the record will not defeat a motion for summary judgment. *McCullough Oil, Inc. v. Rezek*, 176 W.Va. 638, 346 S.E.2d 788 (1986)." *Williams v. Precision Coil*, 194 W.Va. 52, 61 n.14, 459 S.E.2d 329, 338 n.14. Petitioner's only evidence that he accepted the offer was his own uncorroborated, self-serving testimony. He failed to point to any correspondence or recorded telephone call during which he accepted the position, and no other witness testified that petitioner accepted the offer. While he presented affidavits from co-workers that he had given notice to the DOH and turned down a raise, those affidavits in no way prove that petitioner actually accepted the position with respondent. Therefore, we find that the circuit court did not err in awarding summary judgment to respondent on this claim.

Petitioner's second assignment of error is that the circuit court's decision to award summary judgment as to petitioner's wrongful termination claim constitutes reversible error because petitioner submitted evidence that clearly creates disputes as to issues of material fact regarding whether respondent took adverse employment action against petitioner in contravention of West Virginia public policy. As part of this argument, petitioner points to respondent's personnel selection process, which refers to successful applicants as "new employees" and Mr. Green's testimony as a Rule 30(b)(7) designee that he approved Mr.

5

Gooding's recommendation to hire petitioner and that petitioner was a "successful applicant." Petitioner contends that the question of his acceptance of the job offer was a question of fact that should have been determined by a jury and that if a jury concluded that petitioner had accepted the job offer, petitioner would be entitled to protection against wrongful discharge. In addition, petitioner asserts that he was a whistleblower entitled to protection from termination for reporting respondent's wrongful pay practice.

We have stated that

> [w]hen an employee makes a prima facie case of discrimination, the burden then shifts to the employer to prove a legitimate, nonpretextual, and nonretaliatory reason for the discharge. In rebuttal, the employee can then offer evidence that the employer's proffered reason for the discharge is merely a pretext for the discriminatory act.

Syl. Pt. 2, *Powell v. Wyoming Cablevision, Inc.,* 184 W.Va. 700, 403 S.E.2d 717 (1991). In addition, in *Harless v. First National Bank in Fairmont*, 162 W.Va. 116, 246 S.E.2d 270 (1978), this Court recognized that

> [t]he rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

Syl., *id.* Further, West Virginia Code § 6C-1-2 defines an "employee" as "a person who performs a full or part-time service for wages, salary, or other remuneration under a contract of hire . . . for a public body." As set forth above, petitioner failed to provide any evidence, beyond his self-serving statements, that he was an employee of respondent. He fails to point to this Court any evidence that he received payment or other remuneration from respondent. Therefore, he cannot, under our law, establish that he was an employee who was wrongfully discharged by respondent. For these reasons, we cannot find that the circuit court erred in granting summary judgment to respondent on this claim.

Petitioner's third assignment of error is that the circuit court's finding that his attempt to bind respondent would have been an ultra vires act was error because the record establishes that the job offered to petitioner was made by officials with the actual authority to do so. Petitioner contends that respondent was bound by Mr. Gooding's and Mr. Green's offers of employment to petitioner. In its order, the circuit court found that any attempt to bind respondent would have been an ultra vires act, dismissing petitioner's amended complaint because he was never an employee of respondent.[7] Respondent does not dispute that Mr. Gooding and Mr. Green made conditional job offers to petitioner or that these men had the authority to make such offers.

_____

[7] "*Ultra vires* means that the action taken was beyond the power or authority given to the actor. *Black's Law Dictionary* 1522 (6th ed. 1990)." *State v. Chase Securities, Inc.*, 188 W.Va. 356, 358 n.3, 424 S.E.2d 591, 593 n.3 (1992).

Again, the issue is not whether offers of employment were made by Mr. Gooding and/or Mr. Green; that is undisputed. However, as set forth by the circuit court in its order and this Court hereinabove, petitioner failed to provide sufficient evidence to create a dispute of fact as to whether he accepted the offers of employment. In addition, pursuant to the statutory definition of "employee" set forth in the Whistleblower law, West Virginia Code § 6C-1-2, it is apparent that petitioner could not show that he was an employee of respondent. Thus, we find no error in the circuit court's dismissal of petitioner's claim on this issue.

Finally, petitioner contends that the circuit court erred in awarding summary judgment to respondent because there were genuine issues of material fact as to the timeliness of his whistleblower claim. Petitioner asserts that the discovery rule is applicable to his whistleblower claim because he was not aware that respondent had hired the other applicant until October of 2013. Therefore, he claims that his January 16, 2014, filing of his complaint in Randolph County was timely. West Virginia Code § 6C-1-4(a) provides that "[a] person who alleges that he is a victim of a violation of this article may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages, or both, within one hundred eighty days after the occurrence of the alleged violation." It is undisputed that respondent offered the job to the other applicant on June 18, 2013, the date the circuit court concluded was the last day petitioner could reasonably argue an adverse action was taken against him. Respondent points out that petitioner never argued the applicability of the discovery rule before the circuit court, and in its reply before this Court, petitioner fails to point to the record to show that he asserted such argument below. This Court has consistently held that "silence may operate as a waiver of objections to error and irregularities . . . ." *State v. Grimmer,* 162 W.Va. 588, 595, 251 S.E.2d 780, 785 (1979), *overruled on other grounds by State v. Petry,* 166 W.Va. 153, 273 S.E.2d 346 (1980)). The raise or waive rule is designed "to prevent a party from obtaining an unfair advantage by failing to give the trial court an opportunity to rule on the objection and thereby correct potential error." *Wimer v. Hinkle,* 180 W.Va. 660, 663, 379 S.E.2d 383, 386 (1989). The circuit court did not find that the discovery rule was inapplicable. Instead, it applied the statute as drafted, including that the action be filed within 180 days "after the occurrence of the alleged violation." Due to petitioner's failure to argue the application of the discovery rule below and the circuit court's proper application of the statute, we find no error under the specific facts of this case.

For these reasons, we find no error in the circuit court's finding that no genuine issues of material fact existed sufficient to deny respondent's motion for summary judgment.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 3, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin

7

Justice Margaret L. Workman
Justice Allen H. Loughry II