383 S.E.2d 323

**O.J. WHITE TRANSFER & STORAGE COMPANY, INC.**

v.

**WEST VIRGINIA HUMAN RIGHTS COMMISSION and Albert L. Jefferson.**

No. 18558.

Supreme Court of Appeals of West Virginia.

Aug. 2, 1989.

---

Charles G. Brown, Atty. Gen. and Sharon M. Mullens, Sr., Asst. Atty. Gen., Charleston, for West Virginia Human Rights Com'n and Albert L. Jefferson.

Brooks E. Smith, Kingwood, for O.J. White Transfer & Storage Co., Inc.

PER CURIAM:

This is an appeal from a final order entered June 15, 1987, by the Circuit Court of Monongalia County which reversed and set aside an order of the West Virginia Human Rights Commission (Commission). The Commission found that O.J. White Transfer

& Storage Company, Inc. (O.J. White), a Morgantown, West Virginia-based household goods mover, had unlawfully discriminated against the complainant, Albert L. Jefferson, a black male, by failing to hire him because of his race. Mr. Jefferson asks that we reverse the decision of the circuit court and reinstate the Commission's final order.

In mid-January, 1979, Mr. Jefferson filed a written application for entry level employment with O.J. White.[1] There were no job openings, but O.J. White accepted applications during slower seasons to have a labor pool when needed. O.J. White advertised in a local Morgantown newspaper for job applicants on March 18, 19, and 20, 1979. O.J. White had never before used advertisements to fill vacancies. It usually relied on word of mouth referrals from current employees and walk-in applicants.

On March 19, 1979, Donald Allen Cutright, a white male, was hired as a helper. His first work day was March 22, 1979. On March 20, 1979, James Rutter, a white male, was hired as a helper and began work that day. When Mr. Jefferson inquired about job openings on March 20, 1979, he was told that all the positions had been filled. On March 29, 1979, George Christiansen, a white male who filled out an application on March 20, 1979, was hired to replace Mr. Cutright whose employment was terminated on April 2, 1979. O.J. White, without advertising, received approximately six applications for employment each year.

Mr. Jefferson filed a complaint with the Commission on March 20, 1979, alleging that he had been denied employment because of his race. The Commission found probable cause, and a public hearing was held. Mr. Jefferson testified that he exhibited his on-going interest in employment with O.J. White by recontacting the company after his January, 1979 application and before the March, 1979 advertisements. He presented evidence that O.J. White had never hired any black persons in Morgantown as permanent, full-time employees. Outside of Morgantown, black males were hired as short-term, nonpermanent employees to help unload and load moving vans. They were not placed on the company's official payroll, but instead were paid in cash.

O.J. White argued that in March, 1979, when it actively sought job applicants to fill two vacancies, Mr. Jefferson made no application nor did he have an active written application on file with the company. Based on its experience, O.J. White believed that after thirty to forty-five days, the written applications for employment were useless unless an applicant showed on-going interest by recontacting the company. O.J. White was owned and operated by the Robert E. Smyth family. Members of the Smyth family testified that they had no bad feelings toward black persons and regularly hired black employees.

The Commission held that the complainant met his burden of proving employment discrimination based on race in violation of W.Va.Code, 5–11–9(a) (1977). The circuit court reviewed the Commission's order applying the evidentiary standards in Syllabus Point 3 in *Shepherdstown V.F.D. v. State ex rel. State Human Rights Comm'n*, 172 W.Va. 627, 309 S.E.2d 342 (1983):

"In an action to redress unlawful discriminatory practices in employment and access to 'place[s] of public accommodations' under The West Virginia Human Rights Act, *as amended, W.Va.Code*, 5–11–1 *et seq.*, the burden is upon the complainant to prove by a preponderance of the evidence a prima facie case of discrimination, which burden may be carried by showing (1) that the complainant belongs to a protected group under the statute; (2) that he or she applied and was qualified for the position or opening; (3) that he or she was rejected despite his or her qualifications; and (4) that after the rejection the respondent continued to

---

1. The simple application form sought information about truck driving experience, past employment, and references. It also stated the terms of employment. The qualifications for the entry level helper job were to be clean, neat, willing to work, and responsible. No written or physical tests were required.

accept the applications of similarly qualified persons. If the complainant is successful in creating this rebuttable presumption of discrimination, the burden then shifts to the respondent to offer some legitimate and nondiscriminatory reason for the rejection. Should the respondent succeed in rebutting the presumption of discrimination, then the complainant has the opportunity to prove by a preponderance of the evidence that the reasons offered by the respondent were merely a pretext for the unlawful discrimination."

The circuit court stated that O.J. White had met its burden by articulating nondiscriminatory reasons for its actions. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The circuit court concluded that Mr. Jefferson had failed to establish a *prima facie* case of employment discrimination and reversed the Commission's order.

The standard of review in a disparate treatment case is set forth in Syllabus Point 1 of *Frank's Shoe Store v. Human Rights Comm'n,* 179 W.Va. 53, 365 S.E.2d 251 (1986):

> " 'West Virginia Human Rights Commission's findings of fact should be sustained by reviewing courts if they are supported by substantial evidence or are unchallenged by the parties.' Syl. pt. 1, *West Virginia Human Rights Commission v. United Transportation Union, Local No. 655,* 167 W.Va. 282, 280 S.E.2d 653 (1981)."

■ The circuit court correctly reviewed Mr. Jefferson's claim of disparate treatment discriminatory hiring practices under the test we established in *Shepherdstown.* We believe, however, that the circuit court equated the establishment of a *prima facie* case with meeting the ultimate burden of proving intentional discrimination. In a *prima facie* case, a complainant raises an inference of discrimination through direct or circumstantial evidence because we presume the acts complained about, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. *Furnco Constr. Corp. v. Waters,*

438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957, 967 (1978).

■ Mr. Jefferson presented circumstantial evidence sufficient to meet his burden (1) that he was a black male; (2) that he had applied for a job with O.J. White in January, 1979, and was qualified for the entry level position; (3) that he was not hired; and (4) that, after the rejection, O.J. White accepted applications from similarly qualified persons and, in fact, did hire several white males.

■ When a complainant makes a *prima facie* case, the burden of production shifts to the employer to articulate a nondiscriminatory reason for its actions. *State ex rel. State Human Rights Comm'n v. Logan–Mingo Area Mental Health Agency, Inc.,* 174 W.Va. 711, 720, 329 S.E.2d 77, 86 (1985), *citing Texas Dep't of Community Affairs v. Burdine, supra.* As we held in Syllabus Point 2 of *West Virginia Institute of Technology v. West Virginia Human Rights Comm'n,* 181 W.Va. 525, 383 S.E.2d 490 (1989):

> "The complainant's prima facie case of disparate treatment employment discrimination can be rebutted by the employer's presentation of evidence showing a legitimate and nondiscriminatory reason for the employment-related decision in question which is sufficient to overcome the inference of discriminatory intent."

■ The circuit court found that O.J. White had met its burden and rebutted the presumption of discrimination on the basis that Mr. Jefferson's January, 1979 application had been discarded, according to the company's informal policy of cleaning out stale applications every thirty to forty-five days. Furthermore, on March 20, 1979, when Mr. Jefferson inquired about the available job openings, he did not file a new written application as instructed by Mr. Robert Smyth, Sr. Therefore, he was not considered when the job vacancy was filled on March 29, 1979. We agree that the employer articulated a legitimate, nondiscriminatory reason for its actions.

According to Syllabus Point 3 of *West Virginia Institute of Technology v. West Virginia Human Rights Comm'n, supra:*

"The complainant will still prevail in a disparate-treatment employment discrimination case if the complainant shows by the preponderance of the evidence that the facially legitimate reason given by the employer for the employment-related decision is merely a pretext for a discriminatory motive."

In the Commission's view, the employer had no legitimate nondiscriminatory reason for not hiring the complainant. It, therefore, did not reach the issue of whether the employer's reason was a pretext. The circuit court, on the other hand, found a legitimate nondiscriminatory reason articulated by O.J. White, but made no finding about pretext. Instead, after reviewing the record as a whole and finding that the complainant had not met his burden of proving discriminatory intent, the circuit court stated that the complainant had not made a *prima facie* case.

In *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217, the Supreme Court stated with regard to the pretext stage of the proof framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), that the complainant has

"the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that [he] has been the victim of intentional discrimination. [He] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."

Our inquiry, therefore, begins with whether the employer had an application clean-out policy. During the initial stages of the complaint process, O.J. White affirmatively argued that it had a policy. Mr. Smyth, Sr., in a letter to the Commission dated April 25, 1979, stated that it was his company's policy to consider *only* applications that were no older than thirty to forty-five days. However, during the administrative hearing, he testified that the company did not have an exact policy, and, in fact, there was no set time on the applications. More importantly, some applications were kept longer than forty-five days.

■ Robert Smyth, Jr., testified that the company did not have a consistent policy about retention of applications and that the company would hire a person without an application when referred by a current employee. Helen Smyth testified that the company permitted people to fill out applications during slow periods when there were no vacancies and that the applications were cleaned out if they were a month or two old. She stated that old applications were discarded when the drawer space was needed. Pamela Smyth testified that the approximately six applications a year the company received were regularly cleaned out, but she was unsure how often this was done.

From this record, it is apparent that O.J. White had no standardized clean-out policy. Its reasoning as to why Mr. Jefferson was not considered for employment based on the January, 1979 written application was pretext. Within a sixty-day period, Mr. Jefferson made written application for employment, he recontacted the employer at least once, and he was not considered for two relevant job vacancies O.J. White sought to fill. An application remains viable for a reasonable period of time and will be deemed to be for relevant vacancies arising within that period. *Harrell v. Northern Elec. Co.,* 672 F.2d 444 (5th Cir.), *modified,* 679 F.2d 31, *cert. denied,* 459 U.S. 1037, 103 S.Ct. 449, 74 L.Ed.2d 603 (1982); *Phillips v. Joint Legislative Committee,* 637 F.2d 1014 (5th Cir.1981), *cert. denied,* 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 483 (1982); *McLean v. Phillips–Ramsey, Inc.,* 624 F.2d 70 (9th Cir.1980); *Neely v. City of Grenada,* 438 F.Supp. 390, 409 (N.D.Miss.1977); 45A Am.Jur.2d *Job Discrimination* § 319 (1986). This holding is not intended to burden employers to re-

tain applications indefinitely in order to defeat allegations of discrimination.[2]

■ We, therefore, reverse the circuit court and reinstate the Commission's finding of discrimination. However, we remand this case for further consideration of the damages sustained by Mr. Jefferson. The Commissioner awarded the complainant back wages in the amount of $46,751.60.[3] An award may be made when the complainant establishes an economic loss from the employer's discrimination, which was described in *Frank's Shoe Store v. West Virginia Human Rights Comm'n*, 179 W.Va. at 62, 365 S.E.2d at 260, as "the existence and amount of a loss, and a causal link to the defendant's discrimination." The evidence presented regarding economic loss, however, was insufficient to support the Commission's award. On remand, the record should be developed and an appropriate award made.

The $1,000 incidental damages awarded by the Commission are within the limits set in *Bishop Coal Co. v. Salyers*, 181 W.Va. 71, 380 S.E.2d 238 (1989), as modified on rehearing, and should be reinstated on remand.

Reversed and remanded.

---

**2.** A systematic application of a clean-out policy for applications more than a year old did not discriminate against black persons in *Williams v. Hevi–Duty Elec. Co.*, 819 F.2d 620, 627 (6th Cir.), *cert. denied*, 484 U.S. 970, 108 S.Ct. 467, 98 L.Ed.2d 406 (1987).

**3.** Under the West Virginia Human Rights Act, the Commission may take such affirmative action as an award of back pay. W.Va.Code, 5–11–10 (1987).