786 S.E.2d 188

**Martha KNOTTS, Petitioner**

v.

**GRAFTON CITY HOSPITAL, Respondent.**

**No. 14–0752.**

Supreme Court of Appeals of West Virginia.

Submitted on Rehearing April 5, 2016.

Decided April 14, 2016.

Allan N. Karlin, Esq., Allan N. Karlin & Associates, Morgantown, West Virginia, for Petitioner.

Mario R. Bordogna, Esq., Julie A. Moore, Esq., Steptoe & Johnson PLLC, Morgantown, West Virginia, for Respondent.

Kathryn R. Bayless, Esq., Bayless Law Firm PLLC, Princeton, West Virginia, Counsel for Amicus Curiae, American Association of Retired Persons (AARP).

Lonnie C. Simmons, Esq., DiTrapano, Barrett, DiPiero, McGinley & Simmons, PLLC. Charleston, West Virginia. Mark A. Atkinson, Esq., Paul L. Frampton, Esq., Atkinson & Polak, PLLC. Charleston, West Virginia. Counsel on Rehearing for Amici Curiae West Virginia Employment Lawyers Association and United Mine Workers of America.

Chief Justice KETCHUM:

Petitioner Martha Knotts ("Ms. Knotts") appeals the July 8, 2014, order of the Circuit Court of Taylor County granting Respondent Grafton City Hospital's ("hospital") motion for summary judgment. Ms. Knotts alleged that she was wrongfully discharged by the

hospital on the basis of her age—she was 65 years-old when the hospital fired her. The circuit court ruled that Ms. Knotts failed to establish a prima facie case of age discrimination under the West Virginia Human Rights Act, W.Va.Code § 5–11–1 *et seq.* [1967].[1]

In the instant appeal, we address the following issue—whether, in an age discrimination case, this Court should adopt the "substantially younger" rule articulated by the United States Supreme Court in *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). After review,[2] we answer that question in the affirmative. We therefore reverse the summary judgment order of the circuit court and remand this case to the circuit court for further proceedings consistent with this Opinion.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2005, the hospital hired Ms. Knotts, a 58 year-old woman, to work as a housekeeper. She worked for the hospital for seven years until 2012 when she was fired. The hospital's stated reason for Ms. Knotts' termination was that she had committed multiple violations of the hospital's patient confidentiality policy.

The alleged violations occurred on April 2, 2012, when Ms. Knotts was working near the emergency department. Ms. Knotts recognized a patient, Rebecca Green ("Patient Green"), who was being brought into the

emergency department. Patient Green had previously lived with Ms. Knotts for approximately one year, and testified that Ms. Knotts was "like a mother to me."[3] Upon seeing Patient Green in the emergency room, Ms. Knotts asked her, "[A]re you okay? ... What's the problem?" Nurse Brooke Davis was in the emergency department and overheard Ms. Knotts' inquiries to Patient Green. Nurse Davis admonished Ms. Knotts for making inquiries regarding the patient's condition. According to Nurse Davis, Ms. Knotts' inquiries to Patient Green constituted a violation of the hospital's patient confidentiality policy.

Following this interaction, Nurse Davis took Patient Green into the emergency department. Thereafter, Ms. Knotts walked into the hallway outside of the emergency department and saw Patient Green's teenage son, Cordale, who was crying. Ms. Knotts stated that she hugged Cordale and asked him, "Is everything okay?" According to Ms. Knotts, Cordale replied, "Mom's sick." This second communication was also overheard by Nurse Davis.[4] Nurse Davis memorialized her observations of these incidents in a formal incident report.

Upon receiving Nurse Davis' incident report, Tammy Barcus, the hospital's HIPAA (Health Insurance Portability and Accountability Act) compliance officer/director of patient safety and quality, began an investigation. The investigation included (1) an interview with Nurse Davis, (2) an interview with a nurse's aide, Debbie Hickman ("Aide Hickman"), who was present during the incidents, (3) a review of the hospital's

---

1. Ms. Knotts appealed and this Court affirmed the circuit court's order in a memorandum decision. See *Knotts v. Grafton City Hosp.*, No. 14–0752, 2015 WL 5086797 (W.Va. Aug. 28, 2015) (memorandum decision). Ms. Knotts subsequently filed a petition for rehearing which this Court granted.

2. We acknowledge the contribution of amici curiae briefs filed by the United Mine Workers of America, the West Virginia Employment Lawyers Association, and the AARP. The amici urge this Court to adopt the "substantially younger" rule. We value their contributions to this case and have considered their briefs in conjunction with the parties' arguments.

3. Patient Green and Ms. Knotts also had a familial connection which the circuit court described as follows: "[Ms. Knotts'] son-in-law is the nephew of Mrs. Green's husband."

4. A third and unrelated incident occurred on the same day when Nurse Davis overheard Ms. Knotts ask a member of the emergency medical service personnel, "[W]hat are you doing? ... [W]here are you going, boy?" as the EMS technician was transporting a patient. Ms. Knotts testified that the EMS technician was her grandson, Jeremy Knotts, who worked for Taylor County EMS. Ms. Knotts later stated that she made this inquiry so that she could clean the patient's room in connection with her job as a housekeeper.

confidentiality policy, and (4) a review of the patient confidentiality training the hospital had provided to Ms. Knotts.[5] Ms. Barcus did not interview Ms. Knotts during her investigation.

Following her investigation, Ms. Barcus recommended that Ms. Knotts be fired because her actions violated the hospital's patient confidentiality policy. A meeting was then held to consider Ms. Knotts' employment with the hospital. This meeting included the hospital's administrator, Pat Shaw ("Administrator Shaw"), its human resources manager, Missy Kimbrew, and the hospital's housekeeping supervisor, Angela Rinck. Administrator Shaw and the human resources manager agreed with Ms. Barcus' recommendation to fire Ms. Knotts. The housekeeping supervisor disagreed with the recommendation and stated that she believed Ms. Knotts should have been given a written warning and received additional patient confidentiality training. Ms. Knotts was fired by the hospital on April 3, 2012, one day after the alleged violations occurred.

Ms. Knotts filed a grievance challenging her termination. As part of the grievance procedure, Administrator Shaw reviewed Ms. Knotts' termination. In conducting his review, Administrator Shaw interviewed Ms. Knotts, Nurse Davis, Aide Hickman, and the patient Ms. Knotts spoke with in the emergency department, Rebecca Green. After conducting his review, Administrator Shaw upheld Ms. Knotts' termination.

On August 31, 2012, Ms. Knotts filed a lawsuit against the hospital, asserting a single claim for wrongful termination on the basis of her age in violation of the West Virginia Human Rights Act ("WVHRA"), W.Va.Code § 5–11–1 et seq. After the close of discovery, the hospital filed a motion for summary judgment, asserting that Ms. Knotts had failed to establish a prima facie case of age discrimination. Additionally, the hospital argued that even if Ms. Knotts could establish such a claim, the hospital set forth a legitimate, non-discriminatory reason for Ms. Knotts' termination (her violation of the hospital's patient confidentiality policy), and Ms. Knotts did not establish that the hospital's reason for her discharge was pretextual. By contrast, Ms. Knotts argued that she had raised an inference of age discrimination by showing 1) that she was fired for conduct that did not violate HIPAA or the hospital's patient confidentiality policy; 2) that the hospital did not fire "substantially younger" employees who "were guilty of real and substantive violations" of HIPAA and the patient confidentially policy; and 3) that the hospital replaced her with an employee who was "substantially younger" than she was.[6]

The circuit court agreed with the hospital that Ms. Knotts failed to establish a prima facie case of age discrimination and granted its motion for summary judgment. In so ruling, the circuit court gave no weight to the "substantially younger" replacement and comparison employees Ms. Knotts offered as evidence in order to raise an inference of discrimination. The circuit court ruled that:

> [The hospital's] alleged lenient treatment [of the comparison employees] fails to provide an inference of age discrimination because each of these individuals is within the protected class, i.e., age forty or older. Therefore, they are not appropriate "comparators" for purpose of proving age discrimination under this Court's well-established per curiam opinion in Young v. Bellofram Corp., 227 W.Va. 53, 705 S.E.2d 560 (2010). In Young, the West Virginia Supreme Court of Appeals held that a co-employee who was over the age of 40, and, therefore, also a member of the same protected class as a plaintiff, was not a proper comparator to provide an inference of age discrimination under the WVHRA.

---

5. The hospital's personnel policy addressing patient confidentiality states, in part, that "[a]s an employee, your job may allow you access to medical records or other pertinent patient information considered to be confidential. You must not discuss patients or their visitors with anyone outside or inside the Hospital, other than in the course of the patient's care and treatment."

6. The hospital hired two new housekeepers shortly after Ms. Knotts' termination. These two new employees were both younger than Ms. Knotts—one was twelve years younger, the other was twenty-four years younger.

Other than relying upon comparator evidence to try and prove her prima facie case, the Plaintiff also argued that an inference of age discrimination existed because she was replaced in her job after she was discharged by one of two individuals—one of whom was 12 years younger and the other who was 24 years younger. However, even if true, because both [sic] these individuals are also in the protected class, *i.e.,* age forty or older, their replacement of the Plaintiff also fails to offer any sufficient inference of age discrimination for the same reasons.

Ms. Knotts appealed the circuit court's summary judgment order to this Court. She contends the circuit court erred by failing to consider the "substantially younger" replacement and comparison employees simply because these employees were in the same protected class as Ms. Knotts, *i.e.,* over the age of forty. Ms. Knotts asserts that under the Supreme Court's holding in *O'Connor v. Consolidated Coin Caterers Corp., supra,* such evidence was relevant and should have been considered by the circuit court.

## II.

### STANDARD OF REVIEW

■ This is an appeal from a summary judgment order. We have held that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). *See Martin v. Randolph County Bd. of Educ.,* 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995) ("assessing a prima facie case in a ... discrimination claim is a question of law over which we have plenary review."). We have also stated that "[s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus Point 2, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995). Further, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Johnson v. Killmer,* 219 W.Va. 320, 323, 633 S.E.2d 265, 268 (2006) (quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990)).

## III.

### ANALYSIS

The issue raised in Ms. Knotts' appeal is whether this Court should adopt the "substantially younger" rule articulated by the Supreme Court in *O'Connor* when assessing an age discrimination case brought under the WVHRA. We begin our analysis with a general background of our age discrimination law, and will proceed to examine the specific requirements a plaintiff must establish to make a prima facie case of age discrimination.

Under the WVHRA, it is unlawful "[f]or any employer to discriminate against [a protected] individual with respect to ... tenure, terms, conditions or privileges of employment[.]" W. Va.Code § 5–11–9(1) [1998]. The WVHRA protects individuals from discrimination based upon, among other characteristics, "age," which is defined as "the age of forty or above[.]" W. Va.Code § 5–11–3(k) [1998]. Discrimination means "to exclude from, or fail or refuse to extend to, a person equal opportunities because of race, religion, color, national origin, ancestry, sex, *age,* blindness, disability or familial status[.]" W. Va.Code § 5–11–3(h) (emphasis added).

■ Our cases addressing employment age discrimination provide for recovery "premised upon theories of disparate treatment and disparate impact." *Moore v. Consolidated Coal Co.,* 211 W.Va. 651, 660, 567 S.E.2d 661, 670 (2002) (Davis, J., concurring). "Disparate treatment is applicable to claims of intentional discrimination, as opposed to claims that a facially neutral practice is having disparate impact upon a protected class." *West Virginia Univ./West Virginia Bd. of Regents v. Decker,* 191 W.Va. 567, 570–71,

447 S.E.2d 259, 262–63 (1994).[7] Ms. Knotts' complaint is predicated solely upon a claim of disparate treatment—she alleges that the hospital intentionally discriminated against her on the basis of her age.

■ The burden of proof in a disparate-treatment age discrimination case is allocated between the parties according to the framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Numerous opinions of this Court and others have explained the burden-shifting *McDonnell Douglas* evidentiary regime.[8] The first step under *McDonnell Douglas* is to determine whether the plaintiff has made a prima facie case of discrimination. Justice Cleckley noted that "[i]n disparate treatment discrimination cases under the West Virginia Human Rights Act, W. Va.Code, 5–11–9 (1992), a plaintiff can create a triable issue of discrimination animus through direct or circumstantial evi-

dence." Syllabus Point 7, in part, *Skaggs v. Elk Run Coal Co., Inc.*, 198 W.Va. 51, 479 S.E.2d 561 (1996). "After the complainant makes a *prima facie* case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the negative action taken against the complainant. The complainant then must prove that the employer's reason was pretextual." *Kanawha Valley Regional Transp. Auth. v. W.Va. Human Rights Comm'n*, 181 W.Va. at 677, 383 S.E.2d at 859.[9]

■ This Court has addressed what a plaintiff must show to establish a prima facie case of age discrimination under the WVHRA. In Syllabus Point 3 of *Conaway v. Eastern Associated Coal Corp.*, 178 W.Va. 164, 358 S.E.2d 423 (1986), the Court held:

In order to make a prima facie case of employment discrimination under the West Virginia Human Rights Act, W.Va.Code

7. This Court described the differences between disparate impact and disparate treatment claims in *Morris Mem'l Convalescent Nursing Home, Inc. v. West Virginia Human Rights Comm'n*, 189 W.Va. 314, 317, 431 S.E.2d 353, 356 (1993), stating:

There are two theories of employment discrimination, the disparate impact theory and the disparate treatment theory. The first theory focuses on the discriminatory effect of the employer's acts, the second on the discriminatory motive of the employer. More specifically, the disparate impact theory is invoked to attack facially neutral policies which, although applied evenly, impact more heavily on a protected group. Under the disparate treatment theory, the complainant must show that the employer treats some people less favorably than others because they belong to a protected class. Thus, a complainant asserting a disparate treatment theory must prove discriminatory intent to prevail, while a complainant asserting a disparate impact theory need not offer any such proof.

8. *McDonnell Douglas*, a case of discriminatory hiring on the basis of race, established four elements: (1) that the complainant belonged to a protected class; (2) that she applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite her qualifications, she was rejected; and (4) that, after the rejection, the position remained opened and the employer continued to seek applications from persons with complainant's qualifications.

This Court adopted the *McDonnell Douglas* framework to prove discrimination under the WVHRA in *State ex rel. State of West Virginia Human Rights Comm'n v. Logan–Mingo Area*

*Mental Health Agency*, 174 W.Va. 711, 329 S.E.2d 77 (1985), and in *Shepherdstown V.F.D. v. West Virginia Human Rights Comm'n*, 172 W.Va. 627, 309 S.E.2d 342 (1983). *See also O.J. White Transfer & Storage Co., Inc. v. West Va. Human Rights Comm'n*, 181 W.Va. 519, 383 S.E.2d 323 (1989); *K–Mart Corp. v. West Va. Human Rights Comm'n*, 181 W.Va. 473, 383 S.E.2d 277 (1989); *Heston v. Marion County Parks and Recreation Comm'n*, 181 W.Va. 138, 381 S.E.2d 253 (1989).

9. Justice Cleckley described the application of the burden-shifting *McDonnell Douglas* evidentiary regime at length in *Skaggs v. Elk Run Coal Co., Inc.*, 198 W.Va. at 71–72, 479 S.E.2d at 581–82, stating:

This method of proof permits a plaintiff to establish his or her prima facie case, which is in essence a rebuttable presumption of discrimination. The burden of production then shifts to the employer to come forward with a legitimate, nondiscriminatory reason for its actions. In the unlikely event that the employer at this juncture remains silent, the unrebutted presumption compels the court to enter judgment for the plaintiff. But once the employer meets this burden of production, the presumption raised by the prima facie case is rebutted, and the inquiry proceeds to a new level of specificity. The *Barefoot/McDonnell Douglas* framework and its attendant burdens and presumption cease to be relevant at that point, and the onus is once again on the employee to prove that the proffered legitimate reason is a mere pretext rather than the true reason for the challenged employment action.
(Internal citation and quotation omitted.)

§ 5–11–1 *et seq.* (1979), the plaintiff must offer proof of the following: (1) That the plaintiff is a member of a protected class. (2) That the employer made an adverse decision concerning the plaintiff. (3) But for the plaintiff's protected status, the adverse decision would not have been made. The Court in *Conaway* discussed the type of proof a plaintiff could offer to satisfy the third element of the test:

> Because discrimination is essentially an element of the mind, there will probably be very little direct proof available. Direct proof, however, is not required. What is required of the plaintiff is to show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of the protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion. This evidence could, for example, come in the form of … a case of unequal or disparate treatment between members of the protected class and others[.]

*Id.* at 170–71, 358 S.E.2d at 429–30. With the *Conaway* three factor test in mind, we turn to the circuit court's ruling that Ms. Knotts failed to establish a prima facie case of age discrimination.

▮ There is no dispute that Ms. Knotts is a member of a protected class—she is over the age of forty. *See* W. Va.Code § 5–11–3. Further, it is clear that the hospital made an adverse decision concerning Ms. Knotts' employment status when it fired her. The dispute in this case arises from the third factor of the *Conaway* test: "But for the plaintiff's protected status, the adverse decision would not have been made." Syllabus Point 3, in part, *Conaway*. This Court has explained that "[t]he 'but for' test of discriminatory

motive in *Conaway v. Eastern Associated Coal Corp.,* 178 W.Va. 164, 358 S.E.2d 423 (1986), is merely a threshold inquiry, requiring only that a plaintiff show an inference of discrimination." Syllabus Point 2, *Barefoot v. Sundale Nursing Home, supra.*[10]

Ms. Knotts asserts that she raised "an inference of discrimination" by showing 1) that she was fired for conduct that did not violate HIPAA or the hospital's patient confidentiality policy; 2) that the hospital did not fire "substantially younger" employees who "were guilty of real and substantive violations" of HIPAA and the patient confidentially policy; and 3) that the hospital replaced her with a "substantially younger" employee. The circuit court found that the replacement and comparison employee evidence offered by Ms. Knotts failed to raise an inference of discrimination because all of these employees were in the same protected class as Ms. Knotts—age forty or above. The circuit court's ruling relied on a *per curiam* decision from this Court, *Young v. Bellofram Corp., supra.*

The plaintiff in *Young* alleged wrongful termination on the basis of age and gender in violation of the WVHRA. The plaintiff sought to prove her age discrimination case by showing that a fellow employee had been disciplined less severely for engaging in similar conduct. The Court determined that this evidence did not raise an inference of age discrimination because the comparison employee was a member of the same protected class as the plaintiff, age forty or above. "Thus, being members of the same protected age class, the allegedly lenient treatment of [the comparison employee] cannot sustain [the plaintiff's] age discrimination claim." 227 W.Va. at 59, 705 S.E.2d at 566. While *Young* did not contain a new syllabus point

---

**10.** The Court described its clarification of the third prong of the *Conaway* test as follows:

> At the outset, we note some confusion about the prima facie case may have developed from the third prong of the analysis we set forth in *Conaway* that "[b]ut for the plaintiff's protected status, the adverse decision would not have been made." 178 W.Va. at 170, 358 S.E.2d at 429. Use of the 'but for' language in that test may have been unfortunate, at least if it connotes that a plaintiff must establish anything more than an inference of discrimination to

make out a prima facie case. But the *Conaway* decision itself disavowed any desire to require more: "What is required of the plaintiff is to show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion."

*Barefoot, supra,* 193 W.Va. at 484, 457 S.E.2d at 161.

or discuss the issue in depth, it applied an "over 40/under 40" rule. That is, under the Court's ruling in *Young*, a plaintiff cannot raise an inference of age discrimination by offering comparison evidence that an employer treated a fellow employee more favorably if the comparison employee is age forty or above. Ms. Knotts asserts that this rule is inconsistent with the Supreme Court's holding in *O'Connor*, and argues that this Court should overrule *Young's* "over 40/under 40" rule in favor of the "substantially younger" rule contained in *O'Connor*.

In *O'Connor*, a 56–year–old employee sued under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 [1990], after he was fired and replaced by a younger employee. The Fourth Circuit held that the employee failed to make out a prima facie case of discrimination because the replacement employee was in the same protected class as the plaintiff—age forty or above. The Supreme Court reversed the Fourth Circuit's ruling, finding that the focus of a prima facie age discrimination case should be on whether the plaintiff was discriminated against on the basis of age, not on whether the plaintiff was replaced by someone outside the protected class. Justice Scalia, writing the unanimous Opinion of the Court, explained:

> The discrimination prohibited by the ADEA is discrimination "because of [an] individual's age," 29 U.S.C. § 623(a)(1), though the prohibition is "limited to individuals who are at least 40 years of age," § 631(a). This language does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older. **The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out because of his age.** Or to put the point more concretely, there can be no greater inference of age discrimination (as opposed to "40 or over" discrimination) when a 40–year–old is replaced by a 39–year–old than when a 56–year–old is replaced by a 40–year–old. Because it lacks probative value, the fact that an ADEA

plaintiff was replaced by someone outside the protected class is not a proper element of the *McDonnell Douglas* prima facie case.

517 U.S. at 311–12, 116 S.Ct. at 1310 (internal citation omitted) (emphasis added).

Based on this reasoning, the Supreme Court concluded that "[b]ecause the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." 517 U.S. at 313, 116 S.Ct. at 1310.

The Supreme Court's holding in *O'Connor* is in opposition to our ruling in *Young*. While *Young* did not discuss *O'Connor* or weigh the equities of applying the "over 40/under 40" rule instead of the "substantially younger" rule, the present case gives us the opportunity to resolve this conflict. In revisiting *Young*, we note that Syllabus Point 2 of *Dailey v. Bechtel Corp.*, 157 W.Va. 1023, 207 S.E.2d 169 (1974), states, "[a]n appellate court should not overrule a previous decision recently rendered without evidence of changing conditions or serious judicial error in interpretation sufficient to compel deviation from the basic policy of the doctrine of stare decisis, which is to promote certainty, stability, and uniformity in the law." Similarly, this Court has stated:

> No prior decision is to be reversed without good and sufficient cause; yet the rule is not in any sense ironclad, and the future and permanent good to the public is to be considered, rather than any particular case or interest.... Precedent should not have an overwhelming or despotic influence in shaping legal decisions. No elementary or well-settled principle of law can be violated by any decision or any length of time. The benefit to the public in the future is of greater moment than any incorrect decision in the past. Where vital and important public and private rights are concerned, and the decisions regarding them are to have a direct and permanent influence in all future time, it becomes the duty

as well as the right of the court to consider them carefully, and to allow no previous error to continue, if it can be corrected. The reason that the rule of stare decisis was promulgated was on the ground of public policy, and it would be an egregious mistake to allow more harm than good to accrue from it. Much, not only of legislation, but of judicial decision, is based upon the broad ground of public policy, and this latter must not be lost sight of.

*Adkins v. St. Francis Hosp.*, 149 W.Va. 705, 719, 143 S.E.2d 154, 163 (1965) (internal citation and quotation omitted).

■ With these considerations in mind, we find "good and sufficient cause" to depart from our ruling in *Young* which applied the "over 40/under 40" rule. We conclude that the better and more legally sound approach is to follow the "substantially younger" rule announced by Justice Scalia in *O'Connor*. We arrive at this conclusion for the following reasons.

First, the plaintiff in *O'Connor* brought an age discrimination case pursuant to the ADEA. The protection afforded by the WVHRA to West Virginians who are age forty and above is the same as the protection afforded by federal law pursuant to the ADEA. Because age discrimination cases brought under the ADEA and the WVHRA are governed by the same analytical framework, we find no reason to depart from the Supreme Court's application of the "substantially younger" rule in *O'Connor*. This Court has stated that the WVHRA "tracks the wording of Title VII of the Civil Rights Act of 1964 ... but includes protection on the basis of age. Congress enacted the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621–634, to meet this goal." *Kanawha Valley Regional Transp. Auth. v. W.Va. Human Rights Comm'n*, 181 W.Va. 675, 677 n. 2, 383 S.E.2d 857, 859 n. 2 (1989). Similarly, in *Hanlon v. Chambers*, 195 W.Va. 99, 112, 464 S.E.2d 741, 754 (1995), Justice Cleckley stated, "We have repeatedly held that we will construe the Human Rights Act to coincide with the prevailing federal application of Title VII unless there are variations in the statutory language that call for

divergent applications or there are some other compelling reasons justifying a different result." Because the "substantially younger" rule is logically and practically consistent with the purpose of the WVHRA—to prevent discrimination on the basis of age—we find no "compelling reason" to diverge from the Supreme Court's holding in *O'Connor*.

Further, we find that applying the "over 40/under 40" rule could lead to the type of absurd scenario Justice Scalia envisioned in *O'Connor*. Namely, pursuant to the "over 40/under 40" rule, a 40–year–old employee who is replaced with a 39–year–old employee is entitled to offer evidence of the replacement employee to raise an inference of age discrimination. However, a 65–year–old employee who is replaced by a 40–year–old employee is precluded from offering such replacement evidence to raise an inference of age discrimination. The *O'Connor* "substantially younger" rule avoids this potentially absurd result.

Next, we find that overwhelming authority from other jurisdictions weighs in favor of adopting the *O'Connor* "substantially younger" rule. In fact, we have not found any jurisdiction which has rejected the *O'Connor* "substantially younger" rule in favor of the "over 40/under 40" rule. *See City of Hollywood v. Hogan*, 986 So.2d 634, 641–43 (Fla. Dist.Ct.App.2008) (adopting "substantially younger" rule from *O'Connor*); *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 180, 803 N.E.2d 781, 787 (2004) (adopting "substantially younger" test because it is logically connected to the discrimination that the age discrimination statute seeks to prevent); *Bd. of Educ. of Norwalk v. Comm'n on Human Rights & Opportunities*, 266 Conn. 492, 832 A.2d 660, 669 (2003) ("In an age discrimination case, the complainant need not establish that the person who ultimately was offered the position does not fall within the protected class."); and *Wilson v. Rubin*, 104 S.W.3d 39, 52 (Tenn.Ct.App.2002) ("The fourth element of a prima facie age discrimination claim may be satisfied by presenting proof that the employee was replaced by someone substantially younger.").[11]

11. *See also Williams v. Wal–Mart Stores, Inc.*, 184 S.W.3d 492 (Ky.2005); *Hardy v. GE*, 270

Finally, we find that the "substantially younger" rule provides the best means of accomplishing the WVHRA's goal of preventing employment discrimination based on age. We agree with the Supreme Court of Ohio which, in adopting the *O'Connor* "substantially younger" rule, stated: "To acknowledge that [our age discrimination statute] is designed to prohibit age-based discrimination and then to hold that a claim must fail because, although discrimination may have occurred, it occurred in favor of a class member thwarts the statute and tacitly condones the offensive conduct that it was intended to prevent." *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d at 180, 803 N.E.2d at 787. We are also persuaded by Justice Scalia's statement that "the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." *O'Connor*, 517 U.S. at 313, 116 S.Ct. at 1310.[12]

■ Based on the foregoing, we hold that in an age discrimination employment case brought under the WVHRA, this Court adopts the "substantially younger" rule contained in *O'Connor*. In view of this holding, the "over 40/under 40" rule applied by this Court in *Young* is overruled. Pursuant to the "substantially younger" rule contained in *O'Connor*, a plaintiff, who is age forty or older, pursuing an age discrimination claim under the WVHRA, may satisfy the third prong of the prima facie age discrimination test contained in Syllabus Point 3 of *Conaway v. Eastern Associated Coal Corp.*, by presenting evidence that he/she was replaced by a "substantially younger" employee. Further, pursuant to the "substantially younger" rule contained in *O'Connor*, a plaintiff, who is

age forty or older, pursuing an age discrimination claim under the WVHRA, may satisfy the third prong of the prima facie age discrimination test contained in Syllabus Point 3 of *Conaway v. Eastern Associated Coal Corp.*, by presenting evidence that a "substantially younger" employee, who engaged in the same or similar conduct for which the plaintiff faced an adverse employment decision, received more favorable treatment. The focus of a court's inquiry should be on whether the replacement or comparison employee was "substantially younger" than the plaintiff, not on whether the replacement or comparison employee was outside of the plaintiff's protected class, *i.e.*, age forty or above.

■ The Supreme Court did not define the term "substantially younger" in *O'Connor*. Since *O'Connor* was decided, a number of courts have developed differing methods for determining whether an age difference is sufficiently "substantial" to establish a prima facie claim. *See* Conie Lowry Abernathy, *The O'Connor Standard—How Wide is The Divide?*, 31 U. Mem. L. Rev. 611 (2001). We find that creating an objective, rigid "substantially younger" standard would fall to the same logic that defeats our "over 40/under 40" ruling in *Young*. We agree with the Supreme Court of Ohio which concluded that "[t]he term 'substantially younger' as applied to age discrimination in employment cases defies an absolute definition and is best determined after considering the particular circumstances of each case." *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d at 181, 803 N.E.2d at 788. While we decline to adopt a bright-line rule, we note that "[a]ge differences of ten or more years have generally been held to be sufficiently substantial"

A.D.2d 700, 705 N.Y.S.2d 97 (N.Y.App.Div.2000); *Kroptavich v. Pa. Power and Light Co.*, 795 A.2d 1048 (Pa.Super.Ct.2002); *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000); *Hartis v. Mason & Hanger Corp.*, 7 S.W.3d 700 (Tex.App.1999); and *McCain v. City of Lafayette*, 741 So.2d 720 (La.Ct.App.1999).

**12.** The hospital asserts that *O'Connor's* persuasiveness is "limited" based on the Supreme Court's ruling in *Gross v. FBL Financial, Services, Inc.*, 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). We disagree. In *Gross*, the

Supreme Court held that the ADEA does not authorize a mixed-motive claim (when an employee alleges that he suffered an adverse employment action because of both permissible and impermissible considerations), and that "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Id.*, 557 U.S. at 176, 129 S.Ct. at 2350. *Gross* did not address, discuss or overrule the "substantially younger" rule set forth in *O'Connor*. We also note that Ms. Knotts' has asserted a disparate treatment age discrimination claim, not a mixed-motive claim.

to satisfy the "substantially younger" rule. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir.2003).

Applying our holding to the present case, we note that in attempting to establish a prima facie case of age discrimination, Ms. Knotts presented evidence of numerous "substantially younger" replacement and comparison employees. The circuit court, relying on *Young*, did not give any weight to this evidence. We find that remanding this case to the circuit court and allowing it to assess Ms. Knotts' prima facie argument in light of our holding herein is appropriate. This Court takes no position on whether summary judgment will be appropriate on remand; rather, we find that the circuit court is in the best position to consider whether summary judgment is appropriate in light of all of the evidence presented by the parties.

If the circuit court concludes that Ms. Knotts has established a prima facie case of age discrimination under the three-factor test contained in Syllabus Point 3 of *Conaway v. Eastern Associated Coal Corp.*, it must then move on to the second and third steps [13] of the burden-shifting evidentiary framework this Court described in *Kanawha Valley Regional Transp. Auth. v. W.Va. Human Rights Comm'n*, "After the complainant makes a prima facie case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the negative action taken against the complainant. The complainant then must prove that the employer's reason was pretextual." 181 W.Va. at 677, 383 S.E.2d at 859. The second and third steps of the burden-

shifting evidentiary framework were described in greater detail as follows:

> If the plaintiff establishes disparate treatment, then the burden shifts to the defendant to offer a "legitimate, nondiscriminatory reason" for his actions. However, if the defendant fails to meet this burden, the plaintiff wins. When the defendant offers a legitimate nondiscriminatory reason, the burden shifts back to the plaintiff to present evidence of pretext. "[The Plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

*West Virginia Univ./West Virginia Bd. of Regents v. Decker*, 191 at 571, 447 S.E.2d at 263.

## IV.

## CONCLUSION

The circuit court's July 8, 2014, summary judgment order is reversed and this case is remanded for further proceedings consistent with this Opinion.

Reversed and Remanded.

---

**13.** The circuit court's summary judgment order contained a brief mention, and rejection, of Ms. Knotts' argument that the hospital's stated reason for firing her was pretextual. However, since we have concluded that the circuit court must consider the "substantially younger" replacement and comparison employees pursuant to our holding herein, we find that that the circuit court's analysis of Ms. Knotts' argument concerning pretext should also be revisited on remand. Justice Cleckley provided guidance on how a court should assess a plaintiff's claim of pretext in a disparate treatment age discrimination case, stating "[p]retext may be shown through direct or circumstantial evidence of falsity or discrimination." *Barefoot v. Sundale Nursing Home*, 193 W.Va. at 483, 457 S.E.2d at

160. Justice Cleckley further stated, "the plaintiff need not show more than that the defendant's articulated reasons were implausible and, thus, pretextual." *Id.* at 487, 457 S.E.2d at 164. Finally, Justice Cleckley explained that after the plaintiff presents a prima facie case "unless the employer comes forward with evidence of a dispositive, nondiscriminatory reason as to which there is no real dispute and which no rational trier of fact could reject, the conflict between the plaintiff's evidence establishing a prima facie case and the employer's evidence of a nondiscriminatory reason reflects a question of fact to be resolved by the factfinder after trial." *Id.* at 487, n. 19, 457 S.E.2d at 164, n. 19 (internal citation omitted).