**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1738**

AMANDA SHOEMAKER,

                Plaintiff − Appellant,

      v.

ALCON LABORATORIES, INC.,

                Defendant – Appellee.

Appeal from the United States District Court for the Southern District of West Virginia, at Huntington.  Robert C. Chambers, District Judge.  (3:16-cv-02244)

Submitted:  April 19, 2018                     Decided:  August 6, 2018

Before AGEE, KEENAN, and DIAZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Hoyt Glazer, LAW OFFICE OF HOYT GLAZER, PLLC, Huntington, West Virginia, for Appellant.  Christopher L. Slaughter, Gregory P. Neil, STEPTOE & JOHNSON PLLC, Huntington, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Amanda Shoemaker sued her employer, Alcon Laboratories, Inc., for violating the Family Medical Leave Act (the "FMLA"), 29 U.S.C. § 2601 *et seq.*, and the West Virginia Human Rights Act (the "WVHRA"), W. Va. Code § 5-11-1 *et seq*. The district court granted Alcon's motion for summary judgment and Shoemaker appealed. We affirm.

I.

In September 2013, Shoemaker began work at Alcon, a lens manufacturer, on temporary assignment from a staffing agency. Fourteen months later, Alcon hired her as a direct employee. Shoemaker worked primarily at the wet aberrometer station ("wet-ab"), where she manually input information into a computer program as part of the lens quality verification process. Within six months of her employment, Shoemaker made five documented errors. As a result, in May 2015, Alcon issued Shoemaker a warning letter and placed her on a ninety-day Performance Improvement Plan. Shoemaker successfully completed the Plan, but Alcon informed her that if she failed to maintain an overall acceptable level of performance, her employment would be subject to immediate termination.

In early 2015, Alcon transferred Shoemaker from the wet-ab station to the cosmetics station, which required her to inspect lenses through a microscope for extended periods of time. Shoemaker began experiencing neck and back pain, headaches, and dizziness. Her symptoms worsened as she continued to work on cosmetics. She mentioned these

2

symptoms to her supervisors when they came by during routine walk-throughs, but never said that her symptoms prevented her from performing her job.

On October 9, 2015, Shoemaker suffered a dizzy spell and briefly passed out. When she informed her supervisor that she was feeling faint, he suggested she take an extended break. He then transferred her from the cosmetics station back to the wet-ab station. Although Shoemaker continued to experience problems with neck and back pain and dizziness, returning to the wet-ab station helped alleviate her symptoms.

Two weeks later, Shoemaker made a significant mistake at the wet-ab station. She failed to properly process four lots of lenses, which cost Alcon $2 million in potential revenue and took several weeks to fix. Shoemaker's supervisors met with her to discuss the errors and reported that she "showed no remorse or concerns for the oversight" and exhibited a "nonchalant attitude." J.A. 107. As a result, Alcon started to review Shoemaker's employment status.

A few days later, Shoemaker visited a physician, Dr. Guzzo, regarding her neck and back pains and dizziness. Dr. Guzzo gave her a letter recommending that she "work in another setting* until evaluated by an optometrist and pending further workup." J.A. 253. Shoemaker gave the letter to a supervisor who left the note in his desk and did not convey the message to human resources.

---

* Although not entirely clear from the record, it appears that Dr. Guzzo was recommending that Shoemaker not be assigned to the cosmetics station. As we've noted, by then Shoemaker had been moved off the cosmetics station.

3

On November 15, 2015, Shoemaker called to say she would not be at work, even though she had exhausted her paid time off. She provided no excuse. The next day, Alcon issued Shoemaker a final warning letter. Several weeks later, Alcon terminated Shoemaker's employment, citing persistent quality issues and her absence after exhausting her paid time off.

Shoemaker sued, alleging that Alcon (1) interfered with her rights under the FMLA, (2) retaliated against her for exercising her FMLA rights, and (3) discriminated against her based on her disability in violation of the WVHRA. The parties filed cross-motions for summary judgment. The district court granted Alcon's motion and denied Shoemaker's as moot. Shoemaker appeals.

## II.

We review a district court's award of summary judgment de novo, construing the facts in the light most favorable to the nonmoving party. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 276 (4th Cir. 2015). Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment a a matter of law. Fed. R. Civ. P. 56(a). Shoemaker argues that the district court erred in dismissing her FMLA interference claim, FMLA retaliation claim, and her WVHRA disability discrimination claim. We address each argument in turn.

## A.

Shoemaker argues the district court erred in dismissing her FMLA interference claim. She says Alcon interfered with her rights under the FMLA by not notifying her of

4

her eligibility to take FMLA leave. An employer may not interfere with an employee's exercise of or attempt to exercise any right under the FMLA. 29 U.S.C. § 2615(a)(1). The FMLA entitles employees to take up to twelve weeks of leave during any twelve-month period for a "serious health condition that makes the employee unable to perform the functions" of her job. 29 U.S.C. § 2612(a)(1)(D). "When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave. . . ." 29 C.F.R. § 825.300(b). The employer must also notify the employee of her rights and responsibilities and whether it has designated her leave as FMLA qualifying. *Id.* § 825.300(c)–(d).

The district court rejected Shoemaker's interference claim because Shoemaker never requested any kind of leave for a medical condition. The court also noted that Alcon's knowledge of Shoemaker's condition did not qualify as notice that she needed medical leave, and, in fact, Shoemaker has still never asserted that she needed or intended to take leave to address her condition. We agree with the district court's reasoning.

While it's true that an employee seeking leave for the first time for an FMLA-qualifying reason "need not expressly assert rights under the FMLA or even mention the FMLA," she still needs to "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." *Id.* § 825.303(b). Here, there was no leave request. Some request for leave for a medical reason is necessary to trigger Shoemaker's notification rights under the FMLA. *See Krenzke v. Alexandria Motor Cars, Inc.*, 289 F. App'x 629, 632 (4th Cir. 2008); *Brenneman v. MedCentral Health Sys.*,

5

366 F.3d 412, 421 (6th Cir. 2004). Thus, we affirm the district court's decision to dismiss Shoemaker's interference claim.

B.

Next, Shoemaker argues the district court erred in rejecting her retaliation claim. The FMLA protects employees from retaliation for exercising their substantive rights under the statute. *Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 304 (4th Cir. 2016). An employee claiming retaliation must first make a prima facie showing that (1) she engaged in protected activity, (2) the employer took adverse action against her, and (3) the adverse action was causally connected to the her protected activity. *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 551 (4th Cir. 2006). Once the employee makes a prima facie showing of retaliation, the employer must offer a nonretaliatory reason for the adverse action. *See Vannoy*, 827 F.3d at 304.

The district court rejected Shoemaker's retaliation claim because Shoemaker failed to establish that she engaged in any FMLA-protected activity. The district court reasoned that exceeding paid time off isn't a protected activity, particularly given that Shoemaker could not recall why she missed work. Additionally, the court noted that Alcon's knowledge of Shoemaker's medical condition couldn't qualify as a protected activity under the FMLA because Shoemaker never asked to take leave due to her condition. We agree with the district court's analysis in full. Shoemaker never engaged in protected activity and thus failed to make a prima facie showing of retaliation.

6

C.

Finally, Shoemaker argues the district court erred in dismissing her WVHRA disability discrimination claim. Under the WVHRA, it is unlawful for "any employer to discriminate against an individual with respect to . . . conditions or privileges of employment if the individual is able and competent to perform the services required even if such individual is . . . disabled." W. Va. Code § 5-11-9(1). Claims of employment discrimination under the statute follow the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), under which the employee must prove that (1) she is a member of a protected class, (2) the employer made an adverse decision concerning the employee, and (3) but for the employee's protected status, the adverse decision would not have been made. *See Knotts v. Grafton City Hosp.*, 786 S.E.2d 188, 194 (W. Va. 2016). The "but-for" test is "merely a threshold inquiry, requiring only that [the employee] show an inference of discrimination." *Id.* at 195. Nonetheless, the employee must provide "some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class." *Conaway v. E. Associated Coal Corp.*, 358 S.E.2d 423, 429 (W. Va. 1986).

The district court rejected Shoemaker's WVHRA claim because she failed to offer any evidence linking her termination to her disability that would give rise to an inference of discriminatory intent. The court found instead that Alcon accommodated Shoemaker's health issues and only fired her after she made a costly mistake and exceeded her paid time off without an excuse. Again, we agree with the district court. Shoemaker failed to

7

establish a prima facie case that Alcon would not have terminated her employment but for her disability.

III.

For the reasons given, we affirm the district court's judgment.

*AFFIRMED*