**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**April 26, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Angela Metcalf,**
**Plaintiff Below, Petitioner**

**vs.)  No. 20-0354 (Hampshire County 17-C-101)**

**Romney Health Care Center Limited and Keli Schenck,**
**Defendants Below, Respondents**

**MEMORANDUM DECISION**

Petitioner Angela Metcalf, by counsel Harley O. Staggers, Jr., appeals two orders of the Circuit Court of Hampshire County. The first, entered on April 29, 2020, granted respondents' motion for summary judgment. The second, entered on May 19, 2020, denied petitioner's Rule 60 motion. Respondents Romney Health Care Center Limited and Keli Schenck, by counsel Joseph U. Leonoro and Michael J. Moore, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner worked at Romney Health Care Center ("Hampshire Center") from March 11, 1993, until January 26, 2017. She was initially employed as a licensed practical nurse ("LPN") and eventually became a registered nurse ("RN"). Petitioner received several written disciplinary notices concerning her poor job performance, including six written individual performance improvement plans, in the last five years of her tenure at Hampshire Center.

On February 20, 2012, petitioner received an initial individual performance improvement plan ("IPIP"), classified as a "final written counseling," for working outside of the scope of her practice and falsifying patient medical records. This IPIP occurred after a physician working at Hampshire Center reported that petitioner falsified a telephone order by writing an order that the physician did not give. Petitioner did not dispute this accusation. She received counseling from this incident and was informed that any further occurrences would result in her termination.

On September 24, 2014, petitioner received a second IPIP, which was also classified as a "final written counseling," for failing to comply with the resident rights and abuse policies at the facility. This IPIP stemmed from a complaint from a resident that petitioner had pulled the

1

resident's nightgown up at the nurses' station to apply a dressing. Petitioner disputed the allegation and stated that the resident pulled her own gown up at the nurses' station. However, petitioner admitted that she applied a band-aid at the nurses' station. Petitioner received education on resident's rights and abuse policies as a result of this IPIP.

Approximately one year later, on September 30, 2015, petitioner received another IPIP, classified as "counseling-only – non-disciplinary," for treating her coworkers with disrespect. This IPIP stemmed from an incident wherein petitioner locked Respondent Schenck, the Director of Social Services, out of the nurses' lounge, because petitioner was having a "private conversation" with several nurses.

Petitioner received a fourth IPIP on October 6, 2015, "counseling-only – non-disciplinary," for failing to follow the Skin Integrity Care Delivery protocol. The IPIP provided that the Skin Integrity Care Delivery Process was reviewed with petitioner, but petitioner refused to sign the IPIP.

On August 15, 2016, petitioner received a fifth IPIP, which was classified as a "first counseling," for unsatisfactory job performance. This IPIP provided that petitioner failed to follow Hampshire Center's wound treatment policy when she (1) failed to clean off a table with appropriate wipes; (2) used a towel for a barrier instead of paper towels over a trash bag; (3) took a bag with treatment supplies in a resident's room; (4) did not have the wound cleanser in a separate bag; (5) used scissors without cleaning them appropriately; (6) wrote the date on the wound dressing with a pen from her pocket; (7) failed to verify a treatment order; (8) did not open a dressing appropriately and dropped the dressing onto a towel; and (9) did not accurately document a resident's skin checks. Petitioner refused to sign this IPIP.

On January 19, 2017, petitioner received a sixth IPIP, classified as a "second counseling," for negligence in the performance of her job duties. On January 18, 2017, a nurse aide instructor and a state nurse aide surveyor found medications left on a resident's meal tray by petitioner. When a representative from Hampshire Center spoke with petitioner regarding the incident, petitioner responded that she did not have time to sit with the resident for an hour while the resident took her medication. Later, on January 22, 2017, another staff member reported that petitioner left three pills unattended in a resident's room.

On January 22, 2017, petitioner was suspended after she failed to provide pain medication to a resident with cancer who recently had surgery, had an order for pain medication, and who had requested that pain medication. Respondents maintain that petitioner delayed administering the medication for approximately 1.25 hours after she received the request for the medication; petitioner alleges that she gave the medication within the hour that the medication was requested, as required by the resident's orders. After an internal investigation, the complaint against petitioner was substantiated by the administration at Hampshire Center. Thereafter, petitioner's employment was terminated with Hampshire Center on January 26, 2017, for serious violations of clinical protocols and negligent performance.

Petitioner filed suit against respondents in the Circuit Court of Hampshire County on November 2, 2017. In the complaint, petitioner maintained that she was over the age of forty and

was terminated pretextually due to an alleged failure to timely administer medication. Petitioner argued that respondents were motivated to terminate her, in part, due to her age. Petitioner maintained that she was replaced by a twenty-nine year old woman.[1] Additionally, petitioner alleged that she was retaliated against because she made a good faith report of abuse of a resident by another employee.[2] After the conclusion of discovery, respondents filed a motion for summary judgment on petitioner's age discrimination claim.

The circuit court granted respondents' motion for summary judgment, by order dated April 29, 2020.[3] In its order, the circuit court found

> that [respondents] have offered a nondiscriminatory legitimate reason for [petitioner's] termination. The Court **FINDS** it would be illogical to suggest that terminating an employee for serious violations of clinical protocols and negligent performance are not legitimate nondiscriminatory reasons, especially in a nursing home and/or hospital setting, and especially with regard to an elderly cancer patient immediately post-surgery. Although [respondents] did not terminate [petitioner] for prior disciplinary infractions, [petitioner's] disciplinary records are further indicative of the deficiencies in [petitioner's] work performance.

Additionally, the circuit court found

> that [petitioner] has not met her burden in persuading the Court that a discriminatory reason more likely motivated [respondents] in their decision to terminate [petitioner's] employment. Likewise, the Court **FINDS** [petitioner] has not indirectly shown that [respondents] proffered explanation is unworthy of credence. The Court therefore **FINDS** that [petitioner] has offered no real evidence, direct or circumstantial, constituting a genuine issue of material fact that [respondents'] explanation for termination of her employment was a pretext.

In lieu of appealing the summary judgment order, on May 5, 2020, petitioner filed "Plaintiff's Rule 60 Motion"[4] wherein she argued that the circuit court should reconsider its order granting summary judgment in favor of respondents. Respondents opposed the motion, and the circuit court entered a May 19, 2020, order denying Petitioner's Rule 60 motion.

---

[1] Respondents maintain that the employee who was hired to fill the vacancy created by petitioner's discharge was petitioner's age.

[2] Following an anonymous report to the State about wrongdoing by Hampshire Center employee Jordan Stutzman, petitioner gave a written statement about the alleged abuse. Petitioner maintains that this was approximately ten days prior to her third IPIP.

[3] Petitioner also filed a motion for partial summary judgment. In this order, the circuit court also denied petitioner's motion as moot.

[4] Petitioner sought relief pursuant to Rule 60 of the West Virginia Rules of Civil Procedure.

Petitioner then filed her notice of appeal with this Court on June 5, 2020. In the notice of appeal,[5] petitioner raises several assignments of error dealing with the circuit court's order granting summary judgment in favor of respondents.[6] Prior to reaching those issues, however, we must first address whether the circuit court's order denying petitioner's Rule 60 motion was appropriate.

---

[5] Petitioner filed this notice of appeal thirty-seven days after the entry of the order granting summary judgment to respondents. Thus, this Court entered a scheduling order which provided that "if petitioner intends to pursue an appeal of the April 29, 2020, order[,] good cause for the Court to consider such an appeal must be submitted in writing within 10 days of receipt of this order." Petitioner filed a submission of good cause, and respondents opposed petitioner's submission. Upon a review of these submissions, we find that good cause exists for the Court to consider petitioner's appeal of the April 29, 2020, order.

[6] In her brief, petitioner raises multiple assignments of error. First, petitioner argues that a jury should have determined whether respondents had proven an affirmative defense by a preponderance of the evidence. Per petitioner:

> (1) Although Ms. Metcalf has the ultimate burden of persuasion of proving her discrimination case by a preponderance of the evidence, once she establishes a *prima facie* case, the burden of persuasion shifts to the Respondents to prove their articulated reason for terminating Angela Metcalf by a preponderance of the evidence just like any affirmative defense. See *Conaway v. Eastern Associated Coal Corp.*, 178 W. Va. 164, 171, 358 S.E.2d 423, 430 (1986).

> (2) *Knotts v. Grafton City Hospital*, 237 W. Va. 169, 786 S.E.2d 188, footnote 13, found that after a Plaintiff presents a *prima facie* case by meeting the *Conaway* standards, "unless the employer comes forward with evidence of a dispositive, nondiscriminatory reason as to which there is no dispute and which no rational trier of fact could reject, the conflict between the Plaintiff's evidence of establishing a *prima facie* case and the employer's evidence of a nondiscriminatory reason reflects a question of fact to be resolved by the factfinder after trial". See also *Hanlon v. Chambers*, 195 W.Va. 99, 464 S.E.2d 741, Syl pt. 3 (1995)

> A jury should have decided the questions of fact.

Further, petitioner argues that

> West Virginia Code [§] 16-39-4 prohibits retaliation or discrimination in any manner against a health care worker who initiates, cooperates, or otherwise participates in any investigation or proceeding of any governmental entity relating to the care, services, or conditions of a health care entity. Since Angela Metcalf provided a statement and participated in the investigation of an employee of Respondents who was subsequently fired for abusing a resident of Respondents' facility, a jury should have decided Respondents' motive for the firing.

4

This Court has held that "[a] motion to vacate a judgment made pursuant to Rule 60(b), W. Va. R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." Syl. Pt. 5, *Toler v. Shelton*, 157 W. Va. 778, 204 S.E.2d 85 (1974).

Pursuant to Rule 60 of the West Virginia Rules of Civil Procedure, the circuit court could have granted relief on any of the following grounds:

(1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

W. Va. R. Civ. P. 60(b), in part.

Here, the circuit court declined to grant relief on any of the enumerated grounds listed in Rule 60. As we stated in *Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.*, 196 W. Va. 692, 705, 474 S.E.2d 872, 885 (1996), a Rule 60(b) motion is without merit if it "seek[s] merely to relitigate legal issues heard at the underlying proceeding[s.]" It appears that petitioner failed to present any new facts or law in support of the Rule 60(b) motion; instead, the motion was little "more than a request that the . . . court change its mind," and thus, was insufficient to merit Rule 60(b) relief. *Powderidge*, 196 W. Va. at 705, 474 S.E.2d at 885. This Court has long held that "[a]n appeal of the denial of a Rule 60(b) motion brings to consideration for review only the order of denial itself and not the substance supporting the underlying judgment nor the final judgment order." *Toler*, 157 W. Va. at 778, 204 S.E.2d at 86, Syl. Pt. 3. Based upon the record before us, we do not find that the circuit court abused its discretion in denying petitioner's Rule 60 motion and we refuse to disturb this order on appeal.

Petitioner also argues that the circuit court erred in granting summary judgment to respondents, claiming there were questions of fact that should have been decided by a jury. This Court accords a plenary review to the circuit court's order granting summary judgment: "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy,* 192 W. Va. 189, 451 S.E.2d 755 (1994). In conducting our de novo review, we apply the same standard for granting summary judgment that is applied by the circuit court. Under that standard,

"'[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Company v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

*Painter*, 192 W. Va. at 190, 451 S.E.2d at 756, Syl. Pt. 2. In other words,

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

*Id.* at 190, 451 S.E.2d at 756, Syl. Pt. 4. We note that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but it is to determine whether there is a genuine issue for trial." *Id.* at 190, 451 S.E.2d at 756, Syl. Pt. 3. Finally, we recognize that "the party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor. *Anderson [v. Liberty Lobby, Inc.],* 477 U.S. [242] at 252, 106 S.Ct. [2505] at 2512, 91 L.E.2d [202] at 214 [1986]." *Williams v. Precision Coil, Inc.,* 194 W. Va. 52, 60, 459 S.E.2d 329, 337 (1995).

This Court has held that:

> "[i]n order to make a prima facie case of employment discrimination under the West Virginia Human Rights Act, W.Va.Code § 5–11–1 *et seq.* (1979), the plaintiff must offer proof of the following: (1) That the plaintiff is a member of a protected class. (2) That the employer made an adverse decision concerning the plaintiff. (3) But for the plaintiff's protected status, the adverse decision would not have been made." Syllabus Point 3, *Conaway v. Eastern Associated Coal Corp.,* 178 W.Va. 164, 358 S.E.2d 423 (1986).

Syl. Pt. 1, *Knotts v. Grafton City Hosp.*, 237 W. Va. 169, 786 S.E.2d 188 (2016).

Petitioner's age discrimination claim is a disparate treatment claim, not unlike *Knotts*, where this Court noted that it was a disparate treatment case because "she alleges that the hospital intentionally discriminated against her on the basis of her age."[7] "The burden of proof in a disparate-treatment age discrimination case is allocated between the parties according to the framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Knotts* at 175, 786 S.E.2d at 194. "Establishing a prima facie case raises only an inference of discrimination. The defendant can then offer legitimate nondiscriminatory explanations for the allegedly discriminating acts." *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 274 (4th Cir. 1995) (citing *McDonnell Douglas*, 411 U.S. at 802). If a defendant makes this showing, plaintiff is required to show that the legitimate, nondiscriminatory reason for her termination was pretextual. *See Conaway*, 178 W. Va. 166, 358 S.E.2d at 425, Syl. Pt. 4.

---

[7] Based upon our review of the briefing in the instant case, it appears that petitioner confuses the language differences between disparate impact and disparate treatment discrimination claims. We note that "the first stage of an impact case is much more burdensome than its counterpart in a disparate treatment *prima facie* case." *Pittsnogle v. West Virginia Dep't of Transp.*, 216 W. Va. 224, 230, 605 S.E.2d 796, 802 (2004) (citation omitted).

6

Petitioner, however, argues that the establishment of a prima facie case of discrimination, without a demonstration of pretext, defeats a summary judgment motion, even if the employer can articulate a legitimate, nondiscriminatory basis for the adverse employment action. Specifically, it appears that petitioner argues that respondents must also prove why petitioner was terminated.

Although the circuit court did not find that petitioner established a prima facie case of age discrimination, and respondents do not concede this point, the circuit court aptly noted that the analysis does not stop if a prima facie case is established by petitioner. Instead, the burden then shifts to respondents to show a legitimate, nondiscriminatory reason for the termination. Here, respondents presented evidence to show that petitioner was discharged for cause,[8] and in response, petitioner failed to meet her burden of providing evidence sufficient for a reasonable jury to find in her favor. Based upon the record before us, we do not find that the circuit court erred when it granted summary judgment to respondents on this claim.

Next, petitioner argues that the circuit court erred in granting summary judgment to respondents on her patient safety act claim,[9] arguing that she established a prima facie case that she was discriminated or retaliated against for making a good faith report of wrongdoing. Akin to her age discrimination claim, petitioner claims that this should have been determined by the jury. Upon our de novo review, we disagree with petitioner and find that the circuit court did not err when it granted summary judgment to respondents.

As to petitioner's Patient Safety Act claim, the circuit court found that "[t]o establish a case of retaliation under the [Patient Safety Act], [petitioner] must show that she was a healthcare worker who was discriminated or retaliated against for making a good-faith report of wrongdoing or for advocating for patient safety." *See* W. Va. Code § 16-39-4(a). Per the circuit court's order,

---

[8] The evidence presented below plainly demonstrated that this incident was investigated by Hampshire Center, that Hampshire Center substantiated the allegations, and that petitioner was terminated for negligent performance and serious violations of clinical protocols.

[9] The Patient Safety Act prohibits retaliation or discrimination for reports of wrongdoing. Specifically, West Virginia Code § 16-39-4 (2001) provides:

(a) No person may retaliate or discriminate in any manner against any health care worker because the worker, or any person acting on behalf of the worker:
(1) Makes a good faith report, or is about to report, verbally or in writing, to the health care entity or appropriate authority an instance of wrongdoing or waste.
(2) Advocated on behalf of a patient or patients with respect to the care, services or conditions of a health care entity;
(3) Initiated, cooperated or otherwise participated in any investigation or proceeding of any governmental entity relating to the care, services or conditions of a health care entity.
(b) A health care worker with respect to the conduct described is acting in good faith if the health care worker reasonably believes:
(1) That the information is true; and
(2) Constitutes waste or wrongdoing as defined in section three of this article.

7

"[i]f [respondent] presents some evidence establishing a non-discriminatory reason for the adverse employment action in response to the prima facie case, the burden then shifts back to [petitioner] to 'demonstrate the employer's reasons are actually a pretext for discrimination.'" *Daniel v. Raleigh Gen. Hospital, LLC*, No. 5:17-cv-03986, 2018 WL 3650248, at *9 (S.D.W.Va. Aug. 1, 2018); *see also Constellium Rolled Products Ravenswood, LLC v. Rogers*, No. 2:15-cv-13438, 2017 WL 1552325, at *5 (S.D.W.Va. Aug. 28, 2017) (internal citations omitted).

There does not appear to be any causal link between petitioner's statement[10] and her termination, which did not occur until more than one year later.[11] While petitioner argued, and the circuit court agreed, that temporal proximity was not the only proof or factor to be considered to infer that retaliation had occurred, the evidence presented below clearly demonstrated that petitioner offered no real evidence, direct or circumstantial, from which the court could infer a causal link. Moreover, the individuals who reported the wrongdoing remain employed at Hampshire Center, belying this claim. Even assuming, arguendo, that petitioner could state a prima facie case of retaliation, this claim fails because respondents have shown that petitioner was terminated for a legitimate, non-retaliatory reason, specifically her poor job performance. Thus, we find that the circuit court did not err in granting respondents' motion for summary judgment on this claim.

---

[10] The "complaint" at the heart of petitioner's Patient Safety Act claim was made by other employees at Hampshire Center approximately sixteen months prior to petitioner's termination. Although petitioner submitted a written statement as to the conduct of Ms. Stutzman, she submitted this statement while the investigation at Hampshire Center was ongoing. Importantly, the individuals who reported the wrongdoing remain employed at Hampshire Center. Respondents maintain that if they harbored retaliatory animus, then they would have terminated these two individuals, or would otherwise have retaliated against them.

[11] The circuit court noted "that although other Courts have found a three-to-four month time lapse and a seven-month time lapse to be too long to satisfy a causal link based on temporal proximity alone, there is no bright line rule regarding temporal proximity." However, the circuit court cited a United States Supreme Court case for the proposition that "the time period between the employer's knowledge and the adverse action must be 'very close.'" *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001).

Several courts have discussed the causal link required between a complaint and an adverse employment action. *See Hinton v. Virginia Union University*, 185 F.Supp.3d 807, 837 (E.D.Va. 2019) ("A 'causal link' requires that the employer knew of the protective activities and that a reasonable temporal connection exists between the protected activities and the materially adverse misconduct.") (citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007)); *Johnson v. Pitt County Board of Education*, No. 4:16-cv-214-D, 2017 WL 2304211, at *12 (E.D.N.C. 2017) ("Although an adverse action undertaken very shortly after the employer learned of the protected activity typically satisfies the causation showing, a 'lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two.'"); *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (finding that a "thirteen month interval between the [protected activity] and termination is too long to establish causation absent other evidence of retaliation").

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 26, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

9